COLBURN *v.* GRANT.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 221. Argued and submitted April 8, 9, 1901.—Decided May 20, 1901.

The statements below of the Court of Appeals of the District of Columbia in this case, that abandonment of discretionary power by a trustee to his cotrustee, is a fact to be proved by him who alleges it; that so likewise is negligence in the supervision of a trust; and that neither abandonment nor negligence is to be implied without satisfactory proof of the fact, or of circumstances sufficient to warrant the inference, and that the court does not find that proof in the statement of facts contained in the record, are cited and approved by this court.

The treatment of facts and law in the opinion of the courts below was full and satisfactory, and releases this court from further discussion.

THIS is an appeal from a decree of the Court of Appeals of the District of Columbia, which affirmed a decree of the Supreme Court of the District dismissing a bill in equity, which had been filed in that court. The complainants were legatees of one Augustus G. P. Colburn and their trustee, Franklin H. Mackey, against Robert E. Grant, the executor of the estate of

George Fitz James Colburn, a deceased trustee of the estate of said Augustus Colburn, for an accounting, it being alleged that there had come into the hands of said trustee and his cotrustee, both of whom were deceased, a large sum of money, namely, $28,000, and that only $5000 thereof had been accounted for. The codefendants of the defendants' executor were those persons who would be entitled to distribution of his testator's estate. The case was heard upon the pleadings and an agreed statement of facts.

The stipulation of facts was as follows:

" In order to obviate the expense of taking testimony in relation thereto, it is hereby stipulated and agreed that the following are conceded as facts, and that the statements herein may be read and taken in this cause as established.

" That the complainant Franklin H. Mackey, trustee, was appointed by decree of this court in equity cause No. 18,728, and has qualified as such.

" That the complainants Rollinson Colburn and Edward A. Colburn are the only surviving children of Hervey Colburn, who was a brother to Augustus G. P. Colburn.

" That the complainants Elizabeth F. Colburn, Gertrude H. Colburn, F. Helen Colburn and Louise B. Colburn are the only children of H. Hobart Colburn, a deceased child of the said Hervey Colburn; that said H. Hobart Colburn predeceased the said George Fitz James Colburn, and that all the above-named parties are now of full age.

" That George Fitz James Colburn died in September, 1897, unmarried and without issue, his wife having died before him, and that all the brothers and sisters of Augustus G. P. Colburn predeceased the said George Fitz James Colburn except P. D. Miranda Kimball, who died on the 22d day of December, 1897.

" That under the will of the said Augustus G. P. Colburn the said George Fitz James Colburn and John W. Taylor were named as trustees, without bond, for the management of the trust portion of said estate, with power to sell the same.

" That the real estate in the city of Newark, State of New Jersey, mentioned in the will of the said Augustus G. P. Colburn, was sold by said trustees shortly after the death of the

testator, the net proceeds arising therefrom amounting to twenty-seven thousand dollars, which was paid part in cash and the remainder in subsequent instalments, the latter instalments being collected by the said Taylor.

" That the said George Fitz James Colburn removed from the city of Newark in the year 1873 to the city of Washington, D. C., where he resided, except for a few months, up to the day of his death.

" That John W. Taylor, one of the said trustees, was a prominent lawyer of the city of Newark at the time of his appointment, and continued so to be up to the date of his death in the year 1893, and that he was regarded by the general public as a man of business integrity at the time of his death by his own hands on November 20, 1898.

" That after the death of the said Taylor it was found that he had squandered many estates under his custody, amongst others the said estate of Augustus G. P. Colburn, except the sum of five thousand dollars, which was under the exclusive control of the said George Fitz James Colburn, and which latter sum of $5000 has been turned over by the executor of said George Fitz James Colburn to said Franklin H. Mackey, trustee, by order of this court in equity cause 18,728.

" That the said trust estate, except the said sum of five thousand dollars referred to, was by the said George ⋅Fitz James Colburn left solely to the collection, management and discretion of the said Taylor, who handled said sum without the coöperation, supervision or knowledge of the said George Fitz James Colburn, the latter only requiring from said Taylor the payment of the income of said estate to him, said George Fitz James Colburn, as provided by said will.

" Upon the death of said Taylor, trustee, the said George Fitz James Colburn, as surviving trustee, made claim against the estate of said Taylor for the amount of the trust fund by him squandered, as aforesaid, and upon said claim of twenty-two thousand dollars he received a dividend of $3342.45.

" That by paper writings dated respectively September 6, 9 and 11, 1895, Rev. Edward A. Colburn, Rollinson Colburn, and H. Hobart Colburn released all claim to the said $3342.45 unto

the said George Fitz James Colburn, and that thereupon the said George Fitz James Colburn purchased an annuity for himself, which he enjoyed until his death. Said paper writing is in the following form: 'I hereby give my full assent that my cousin, George Fitz James Colburn, shall have full right to use the sum of $3342.45 received by him from his father's estate, should he so have need, and do resign any interest I may have in said sum of $3342.45 if he so desire to use it.' Originals of above paper to be filed in this suit."

*Mr. Franklin H. Mackey* for appellants.

*Mr. J. Holdsworth Gordon,* for appellee, submitted on his brief.

Mr. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

The case was heard in the Supreme Court of the District on bill, answers and an agreed statement of facts. Some complaint is made in appellants' brief of the alleged fact that the court treated certain allegations in the answer of the defendant executor as evidence, although an answer under oath had been dispensed with, and it is said that only those portions of the answer which admitted the allegations of the bill, or contained admissions against interest, should have been considered.

We are inclined to think that, upon the record made up and presented at the hearing, the court had a right to consider all the allegations of the answer. No replication, putting the allegations of the answer in issue, appears to have been filed, and the court may have well supposed that the complainants had agreed to have the case disposed of on bill, answers and stipulation. If such a course was a surprise to counsel, application should have been made to have the decree suspended, and for leave to take rebutting evidence.

However, we have examined and compared the respective allegations of the bill and answer, and do not perceive that, even upon the theory of appellants' counsel, any such substan-

tial difference in the facts could have been made to appear as would have justified a different result.

Not only, then, is there an agreement as to the controlling facts, but there also seems to be little or no controversy in respect to the principles of law involved. The learned counsel for the appellants concedes, in effect, the propositions of law found in the opinion of the Court of Appeals, but contends that a proper application of those propositions would call for a different decree.

The purpose of the bill is to have the estate of George Fitz James Colburn held liable for a defalcation by John W. Taylor, who was united with said Colburn in the administration of a trust estate created by the will of Augustus G. P. Coiburn, father of George F. J. Colburn.

The father, who was a resident of Newark, New Jersey, died on May 27, 1872, and in his will, dated May 25, 1872, devised to said son, for and during his natural life, a certain dwelling house and lot in said city, with power to the trustees named in the will, who were his said son and John W. Taylor, to sell the same at any time, and to invest the proceeds of such sale as advantageously as possible, and to pay over the income arising therefrom to his said son during his life. Shortly after the death of the testator the trustee sold this real estate for the sum of $27,000, which was paid partly in cash and partly in instalments. George F. Colburn subsequently removed to the city of Washington, where he died in September, 1897.

John W. Taylor was a prominent lawyer in the city of Newark at the time of his appointment, and continued so to be up to the date of his death, and was regarded by the general public as a man of business integrity at the time of his death by his own hand on November 20, 1893.

After Taylor's death it was discovered that he had squandered many estates in his custody, among others the said estate of Augustus G. P. Colburn, except the sum of $5000, which was under the exclusive control of George F. J. Colburn, and which latter sum is not in controversy here.

Upon the death of Taylor, George F. J. Colburn, as surviving trustee, made claims against the estate of Taylor for the amount

of his defalcation in the estate of Augustus G. P. Colburn, and upon said claim of twenty-two thousand dollars he received a dividend of $3342.45. The amount so received was subsequently, with the consent of the residuary legatees under his father's will, invested by George F. J. Colburn in an annuity for himself, which he enjoyed until his death.

Without going into further details, it is evident, and, indeed, is conceded, that George F. J. Colburn was not involved in the dishonest acts of his cotrustee, and which resulted in the loss of the larger part of the trust estate. Nor is it contended that, as a matter of law, was George F. J. Colburn liable for the malfeasance of his cotrustee.

What is contended is that an abandonment of discretionary power by a trustee to a cotrustee, where the trust is entitled to the united discretion of both, is such an act of supine negligence as to render the trustee who has abandoned his active participation in the management of the trust liable for the losses occasioned by the misconduct of the cotrustee; that George F. J. Colburn did so abandon his functions as trustee, and that, accordingly, he was, and his estate now is, liable for the money misapplied by Taylor.

The courts below did not refuse to recognize the soundness of appellants' statement of the law as a general proposition, and, indeed, stated it strongly in the following language:

"Cotrustees may not act independently of one another, nor ignore each other in the management of the trust. The trust is entitled to the united judgment, discretion and ability of all the trustees selected. For this reason they may not delegate discretionary powers among themselves."

But it was the opinion of those courts that, while such is the general doctrine, yet the facts of the present case do not call for its application; that the conduct of Colburn was not in the nature of an abandonment by him of duties devolved upon him as trustee under his father's will.

The Supreme Court thus expressed its conclusion:

"After a loss has occurred, as in this case, by the positive fault of some one, it may be easy to say how it could have been prevented; but in order to hold some one else fairly responsible,

the point of view held by the party sought to be made liable at and before the loss occurred is the only safe point of view to assume. . . . From the light of the circumstances shown, I cannot convince myself that George F. J. Colburn was guilty of any such negligence as to render him liable, nor that the claim now made by the bill in this case is a proper one to be allowed against his executor."

The Court of Appeals, after a full statement of the facts and the law applicable thereto, expressed the following conclusion:

"But we fail to find in the agreed statement of facts sufficient proof of the abandonment of the duties of the trust by George Fitz James Colburn, 16 App. Cas. D. C. 107, 114, or any proof of negligence on his part in the supervision of the trust in such manner as to render himself or his estate liable.

"It is true that it is said in the statement that the trust estate, to the extent of twenty-two thousand dollars, was left by Colburn to 'the collection, management and discretion solely of Taylor,' and that Taylor 'handled said sum without the cooperation, supervision or knowledge of Colburn.' But this is not sufficient. The statement may be consistent with the relinquishment only by Colburn of the ministerial duties which he might well have intrusted to Taylor. In order to hold Colburn responsible there should be some evidence of abandonment by him of the discretionary duties which it was not proper for him to delegate to his cotrustee.

"It is very evident that the testator had confidence in Taylor, whom he designates as his friend, and who was in all probability his legal adviser; and the joinder of Taylor in the trust is, under the circumstances, strong evidence that it was the testator's intention that his should be the controlling mind in the management of the trust; and this view is fully corroborated by the fact that Colburn, in view of his own special interest in the trust and that there was a residuary devise of the trust fund, might not be entirely impartial or entirely judicious in such management. If the real estate which originally constituted the trust fund had remained unsold, and no duty had been imposed on the trustee Taylor other than to collect the rents and to remit them to Colburn in Washington, and this

duty had been left exclusively to him, we do not think that it would be reasonable to infer from this fact alone that Colburn had abandoned the trust; and yet in that contingency this would have been the only duty to be performed under the trust, except the payment of taxes and insurance, and all this would necessarily have been under the supervision of Colburn and subject to his approval and ratification in the acceptance of the rents remitted to him. When the real estate was sold and the proceeds invested or reinvested, did any different condition arise? It does not anywhere in the record appear how this fund of twenty-two thousand dollars, alleged to have been left to the management of Taylor, was invested. It does not appear that, after having been once invested, there was ever need or occasion for reinvestment. Indeed, it may reasonably be conjectured that the amount remained as a mortgage on the property sold; and inasmuch as there is nothing to show that such mortgage was ever paid and that the proceeds were reinvested, it would not be unreasonable to assume that the investment remained as it was first placed. At all events, we cannot assume the contrary in the absence of proof. We cannot assume that the money became due, and that Taylor received it and reinvested it without the concurrence of Colburn, or that he wholly failed to reinvest it and converted it to his own use. That Taylor obtained control of the fund and misappropriated it is very clear, but when, or how, or under what circumstances he did so, we are not told. For all we know, he may have come into possession of the fund in the last week or the last month of his life, and he may have been the ministerial agent to receive the money when it was due and payable. He may have come properly into possession of it, and the misappropriation may have been an afterthought. We cannot infer delinquency on the part of Colburn when there is no more proof than is contained in this record that, by his abandonment of his trust, or by his negligence in the supervision of it, he had put it in the power of his cotrustee to prove faithless in his duty. Abandonment of discretionary power by a trustee to his cotrustee is a fact to be proved by him who alleges it, and so likewise is negligence in the supervision of a trust. Neither abandonment

nor negligence is to be implied without satisfactory proof of the fact or of circumstances sufficient to warrant the inference, and we do not find that proof in the statement of facts contained in this record."

Another fact in this case is not without weight.

After Taylor's death, and when it appeared he was a defaulter, Colburn at once presented a claim, as cotrustee, against his estate, and was allowed a dividend in the sum of $3342.45. Thereupon the residuary legatees consented in writing that Colburn should have a right to use said sum in the purchase of an annuity on his own account.

While we are not disposed to accept the suggestion, on behalf of the appellees, that by consenting to such a use by Colburn of the money received from the estate of Taylor, the residuary legatees were estopped from claiming liability for the rest of the fund misapplied by Taylor, we yet think that such a consent tends strongly to show that the residuary legatees, who were fully aware of all the facts and circumstances, did not regard Colburn's conduct as subjecting him to liability for Taylor's misconduct. And the further fact, shown by the record, that no intention to hold Colburn for Taylor's defalcation was ever disclosed till more than two years after Colburn's death, and nearly six years after that of Taylor, tends to show that the effort to so hold him is an afterthought, not entitled to the approval of a court of equity.

The treatment of facts and law in the opinions of the courts below, contained in the record, was so full and satisfactory as to relieve us from further discussion.

The decree of the Court of Appeals of the District of Columbia is

*Affirmed.*