### FIRST NAT. BANK OF OKLAHOMA CITY v. FARMERS NAT. BANK OF CHICKASHA et al.

No. 15494—Opinion Filed July 14, 1925.

Rehearing Denied Dec. 15, 1925.

**Payment—Application of Payments—Rights of Third Persons.**

The general rule is that where the creditor holds more than one claim against his debtor, it is the right of the latter on making a payment to direct on which debt it shall be credited, and if the debtor fails, at the time of the payment, to direct the appropriation, the creditor may apply the payment as he sees fit. But where a third person has a lien or equity in the specific money which is turned over to the creditor, the same may not be applied to the discharge of another claim held by the creditor, but must be applied in a manner beneficial to the third person.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by the Farmers National Bank of Chickasha, Okla., and O. B. Mothersead, Bank Commissioner, intervener, against the Lucky Ridge Production Company, a trust estate, and J. T. Chelf, trustee, and the First National Bank of Oklahoma City. Judgment for plaintiff and intervener against the First National Bank of Oklahoma City. The First National Bank of Oklahoma City brings error. Affirmed.

Wilson, Tomerlin & Threlkeld and S. S. Chandler, for plaintiff in error.

·Bailey & Hammerly and W. C. Lewis, for defendants in error.

Opinion by PINKHAM, C. This is an ap-

peal by the plaintiff in error, First National Bank of Oklahoma City, defendant in the lower court, from a judgment in favor of the defendant, in error. Farmers National Bank of Chickasha, Okla., plaintiff below, and O. B. Mothersead, Bank Commissioner, intervener, in which decree the trial court adjudges, as shown by the journal entry of judgment, that both the Farmers National Bank of Chickasha and O. B. Mothersead, acting Bank Commissioner, of the state of Oklahoma, do have and recover of and from the defendant, the First National Bank of Oklahoma City, Okla., the sum of $2,553.86, together with interest and costs. The parties will be referred to as they appeared in the trial court.

The following are the facts necessary to be stated: The plaintiff bank was originally a state bank and was converted into a national bank in July, 1922, and in the merger the plaintiff became the owner of a certain note in the sum of $8,750, executed by the J. T. Chelf Oil Company to its predecessor, and as collateral security to this note, it became the owner by indorsement of a note in the sum of $6,450, dated February 21, 1922, due June 1, 1922, which note was executed by the Lucky Ridge Production Company. The Lucky Ridge Production Company was a trust estate with J. T. Chelf as one of the trustees, who executed a mortgage to the J. T. Chelf Oil Company, a copartnership, of which copartnership J. T. Chelf was a member. This mortgage was executed as security for the payment of four notes. One of these notes was for the sum of $6,450, and in due course and before maturity it was indorsed to the Farmers National Bank of Chickasha, which bank continued to hold the same. This note, owned by the plaintiff bank, together with the other three notes, all of which aggregate the sum of $21,000, was secured by a mortgage executed by the said Lucky Ridge Company covering:

"The entire oil and gas leasehold interest in and to (the land described herein) together with all improvements thereon, aggregating the wells drilled thereon and oil and gas produced, all casing, tools, the standard drilling rig on said land, with all equipment of every nature, used in connection with the production of the oil and gas, and the disposition thereof, to include all property of every description belonging to the mortgagor now on said land. Subject to mortgages heretofore given to the Farmers State Bank."

The Lucky Ridge Company was indebted to the Farmers State Bank of Comanche, of which bank J. T. Chelf was the president and principal owner, and in October, 1921, the Lucky Ridge Company executed a mortgage to the Comanche bank to secure the sum of $5,750, which mortgage contained the same provisions as to covering the oil and gas lease and oil and gas products as those contained in the mortgage executed to the Chelf Oil Company.

The record further discloses that on May 18, 1922, J. T. Chelf, who was largely interested in the Lucky Ridge Company, the Chelf Oil Company, and the Comanche bank, was personally indebted to the First National Bank of Oklahoma City in the sum approximating $19,000. The Comanche bank, at the same time, was indebted to the Oklahoma City bank in the sum approximating $20,000. On May 18, 1922, Mr. Chelf was in financial difficulties and undertook to obtain further advances from the Oklahoma City bank. Chelf on that date, May 18, 1922, caused to be released of record the first mortgage held by the Comanche bank on the Lucky Ridge property securing $5,750. He also caused to be released of record the second mortgage on the Lucky Ridge property held by the Chelf Oil Company, and which secured the note owned by the plaintiff Chickasha bank. This release was secured without the knowledge or consent of the plaintiff bank. The releases of these mortgages, it appears, were prepared by the attorney for the Oklahoma City bank from an abstract covering the property, which was in the possession of said attorney for the Oklahoma City bank. After these releases of mortgages were so prepared, they were submitted to Mr. Chelf, who executed the same.

On the same date, May 18, 1922, two new mortgages were taken as follows: A first mortgage from the Lucky Ridge Company to the Comanche bank to secure the sum of $9,915.30; and a second mortgage to the J. T. Chelf Oil Company to secure the sum of approximately $21,000. The mortgage to the Chelf Oil Company was recited to be expressly subject to the mortgage that day executed to the Comanche bank in the sum of approximately $9,900. On the same date the Lucky Ridge Company also executed, in addition to these mortgages, assignments of its oil runs covering said property to the Oklahoma City bank.

The Oklahoma City bank held an assignment of the $9,900 Lucky Ridge first mortgage to the Comanche bank as additional collateral to the indebtedness due it by the Comanche bank. The Oklahoma City bank also held the Lucky Ridge second mortgage executed to J. T. Chelf Oil Company, as ad-

ditional collateral security to the individual indebtedness of J. T. Chelf.

Subsequent to the assignment of these mortgages to the Oklahoma City bank, the Comanche bank failed and was taken over by the Banking Commissioner. After the failure of the Comanche bank, the liquidating agent paid the indebtedness of the Comanche bank to the Oklahoma City bank, and received a return of the collateral paper of the Lucky Ridge Company and the $9,900 note secured by the aforesaid mortgage, and fully discharged the indebtedness of the Comanche bank to the Oklahoma City bank.

In the meantime, the Oklahoma City bank had collected approximately $2,500 in oil runs under the mortgages of May 18, 1922, and had applied the same as a credit on the individual indebtedness of J. T. Chelf.

The present suit was begun by the Farmers National Bank of Chickasha to cancel the release of the mortgage which secured its note that was executed on May 18, 1922, when the new mortgages were executed and assigned to the Oklahoma City bank, the plaintiff bank alleging that such release of the mortgage was executed without its consent, and that the same was executed with knowledge on the part of the Oklahoma City bank that it owned one of the notes secured thereby. It prayed a reinstatement of the mortgage and foreclosure of the same.

The Bank Commissioner filed a petition of intervention, claiming to have a prior mortgage upon the property and upon the oil runs therefrom, under its $9,900 note and mortgage heretofore referred to, which was a renewal of the former mortgage of $5,750, heretofore mentioned.

Judgment by both plaintiff and intervener was asked against the Oklahoma City bank upon the theory that the Oklahoma City bank had converted to its use and benefit property upon which both plaintiff and intervener held a prior and superior mortgage. From the judgment rendered in favor of the plaintiff and intervener against the defendant, First National Bank of Oklahoma City, the defendant bank has appealed to this court.

We think it clearly appears by the record that the only question here is whether the plaintiff, Chickasha bank, and the intervener, Banking Commissioner, are entitled to recover from the defendant bank the proceeds from the sale of the oil and gas runs which the defendant collected and credited upon the second mortgage.

The principal proposition relied upon by the defendant for a reversal of the judgment is that the trial court erred in failing to hold that the First National Bank of Oklahoma City had a right to apply the proceeds of the oil and gas runs to the individual indebtedness of J. T. Chelf. Authorities are cited in the defendant"s brief, announcing the general rule of law, that a creditor receiving payment in the absence of directions may make application of such payment to any indebtedness due by the debtor.

It is conceded by the plaintiff bank that an ordinary mortgage does not cover rents and issues from the property until reduced to possession by receivership or otherwise, but it is contended by the plaintiff and intervener that when the terms of mortgage are made expressly to cover rents and issues from property, the same will be effective and enforceable.

It will be observed that these mortgages, one executed in 1921, to the Comanche bank, and another executed in March, 1922, to the Chelf Oil Company, securing four notes, one of which was held in due course by the plaintiff Chickasha bank, expressly mortgaged the oil and gas produced from the leasehold estate in question. In other words, these mortgages expressly cover oil and gas produced from such leasehold estate.

"The general rule is that where a creditor holds more than one claim against his debtor, it is the right of the latter, on making a payment, to direct on which debt it shall be credited, and if the debtor fails, at the time of payment, to direct the appropriation, the creditor may apply the payment as he sees fit. But where a third person has a lien or equity in the specific money which is turned over to the creditor, the payment may not be applied to the discharge of another claim held by the creditor, but must be applied in a manner beneficial to the third person." Note to Wyandotte Coal, etc., Co. v. Wyandotte Paving, etc., Co. (Kan.) Ann. Cas. 1917C, 582.

We do not understand from the argument of the defendant bank that the oil and gas produced from this property could not, as a matter of law, be mortgaged. The contention is, as we understand it, that while the mortgage given to J. T. Chelf Oil Company by Lucky Ridge Production Company, on March 10, 1922, which was given to secure the payment of the note of $6,450, held by the plaintiff bank, mortgaged the oil and gas produced, this mortgage, which secured the note held by the plaintiff bank, was released of record on May 18, 1922, at the time the two new mortgages held by the defendant were executed, and that these two subsequent

mortgages did not contain the provision "oil and gas produced," from which the conclusion is drawn that the defendant bank had the right to apply the proceeds from the oil runs on the second mortgage held by it. This circumstance cannot operate, we think, to defeat or impair the right of the plaintiff bank to the proceeds of the sale of oil and gas produced as provided in the mortgages released by the Lucky Ridge Company.

The plaintiff's rights, and the intervener's rights, had already attached and cannot be ignored by the defendant, by applying the proceeds of the oil runs to the personal indebtedness of Chelf, particularly in view of the conclusion, which we have arrived at, that the defendant bank had actual knowledge of the mortgage liens existing in favor of the plaintiff and intervener.

The defendant Oklahoma City bank further contends that it had no notice of the prior mortgage of plaintiff or that the plaintiff held one of the notes secured by the prior mortgage. The testimony of the vice president of the Oklahoma City bank shows that it had an abstract covering this property; that the releases of these two mortgages were prepared by the attorneys for the defendant Oklahoma City bank, from such abstract; that Mr. Chelf discussed these prior mortgages with the Oklahoma City bank; and, further, the court expressly found that the Oklahoma City bank had knowledge thereof. We think there is ample testimony disclosed by the record to support this finding of the court.

It appears that the plaintiff Chickasha bank and the Bank Commissioner, by stipulation, consolidated their rights and agreed that they would divide the proceeds of the property if either should recover.

Upon a careful examination of the entire record, we think the finding of the trial court that both the plaintiff and intervener had valid and subsisting mortgage liens upon all oil and gas produced and saved from the leasehold in question owned by the Lucky Ridge Production Company, and that the defendant bank in Oklahoma City had knowledge, both actual and constructive, of such mortgage liens, and that the same were superior and prior to any claims or liens of the defendant bank, are amply supported by the record; and that the judgment of the lower court, that the Farmers National bank and O. C. Mothersead, acting Bank Commissioner, have and recover of and from the defendant, First National Bank of Oklahoma City, the sum of $2,553.96, with interest

thereon, and for costs of suit, should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 30 Cyc. pp. 1228, 1233, 1252.