## RED BANK OIL CO. v. COOK.

No. 16052—Opinion Filed Dec. 8, 1925.

**1. Oil and Gas—Drilling Contract — Payment Upon Completion—Waiver by Payments During Progress of Work.**

Where the contractor agrees with the owner to drill an oil and gas well to a certain depth or to a lesser depth, at the option of the owner, for a stipulated price per foot, and a certain price per day for other work connected with the drilling, liability to pay for the work does not arise until the contract is finished, but where the owner makes advancements for the work as the same progresses and upon orders of the contractor, he waives his right not to pay until the contract is finished.

**2. Same—Liability on Separate Contract.**

In an action on such contract by the contractor to enforce payment for a balance due, where the defendant offers as a defense that he has paid in full by proof that plaintiff was drilling another well at the same time he was drilling the well involved in the action, but under a separate, though similar, contract, and for which he made advance-

ments, and that the advancements on both were charged to the plaintiff under one general account, and the said well was not complete at the time plaintiff demanded settlement for the balance due on the one that was complete, and defendant then applied, or offered to apply, the advancements for work on the unfinished well to the unpaid balance on the one that was finished, held, that it was not error for the court to refuse this defense and render judgment for plaintiff for amount found to be due without any consideration of, or reference to, the contract or transaction in connection with the one not finished.

**3. Same—Liability for "Such Other Day Work as Is Usually Required."**

Where the contract provided for a certain price per day for certain specified work in connection with drilling an oil and gas well and for "such other day work as is usually required" in connection with drilling such well, and an action is brought to enforce payment for balance due for drilling the well, including items of both these classes as above stated, and the petition pleads the items in the language of the contract and the amount due for each one, it is not error for the court to allow proof to show that the items claimed outside these definitely specified in the contract were such as usually came under the head of day work in oil well drilling.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by C. Z. Cook against Red Bank Oil Company, a corporation, to recover a balance due on a contract for drilling an oil and gas well. Judgment for plaintiff, and defendant brings error. Affirmed.

Thrift & Davenport, for plaintiff in error.

E. M. Connor, for defendant in error.

Opinion by THREADGILL, C. This action was brought by defendant in error as plaintiff against plaintiff in error as defendant to recover a balance claimed to be due on a drilling contract. We will refer to the parties as they appeared in the trial court. Plaintiff alleges in his petition that the contract was made on May 15, 1922; that it was agreed in the contract that he would drill a well for defendant on a certain tract of land in section 10, T. 16 N., R. 6 E., in Creek county, and to be known as the Irelan well No. 1; that the well was to be drilled to the Wilcox sand; that the price to be paid was $2.75 per foot down to the Mississippi lime, and $3.50 per foot from this point to the total depth when completed; that plaintiff was to have "$80 per day of

24-hour towers" on all day work, such as shooting, pulling casing, cleaning out, swabbing, etc., connected with the drilling; that defendant was to furnish rig, fuel, water, casing, etc.; that defendant reserved the right to take over the well at a lesser depth than the Wilcox sand and pay the same according to the depth drilled; that the well was drilled to a depth of $3,260 feet and was completed and turned over to and accepted by defendant; that plaintiff claimed 19½ days of 24-hour towers each at $80 per day, provided for in the contract for any failure of defendant to furnish the materials and machinery agreed upon; that the 3,260 feet drilled was under the price of $2.75 per foot, making the sum of $8,965: that the 19½ days of 24-hour towers each for shutdown time, etc., at $80 per day, amounted to "$1,558, making the total cost of the well $10,523." That defendant had paid him on this amount the sum of $9,016.82, leaving a balance due him of $1,506.18, for which he prays judgment. The copy of the contract was attached to the petition, and also a copy of an itemized statement showing the general items of the work and payments and balance due. Defendant filed an answer admitting that it was a foreign corporation and the execution of the contract, but denying all other allegations of the petition. On May 21, 1924, by leave of court, plaintiff amended the last two paragraphs of his petition by stating that he was entitled to $80 per day for 20¼ days of 24-hour towers each, making the sum of "$1,623"; that the total cost of the well was $10,580, and the amount paid was $7,618.67, leaving a balance due in the sum of $2,969.33, for which he prays judgment. To the petition as amended is attached a general itemized account of the work done and payments made, differing somewhat in the items stated from the other account attached. There seem to be some small errors in the figures of the accounts, but we are not changing the same, but copying them as stated in the petition. Defendant filed a general denial to the petition as amended. On June 25, 1924, the cause was tried to the court without a jury, and resulted in a judgment for plaintiff in the sum of $895.19, and defendant has appealed and assigns 17 errors for reversing the judgment, but urges only 7 of them, and presents them under two propositions: The first is that the court erred in rendering judgment for plaintiff, and the second is that the court erred in admitting improper evidence and ruling out competent and material evidence.

1. Under the first proposition defendant

contends that the rule applicable to the facts disclosed by the evidence did not justify the trial court in giving plaintiff judgment for $895.19, or any other amount. The contention is that the evidence shows that while plaintiff was drilling the Irelan well No. 1, he was also drilling another well for defendant, called the Newblock well. The contracts for the two wells were of the same general character, but were separate and distinct from each other. They both provided for completed wells, or accepted by defendant before payment was made. But it appears that in the progress of the work, plaintiff became financially embarrassed, and, upon orders to defendant, advancements were made on both wells and charged to plaintiff under one account on its books, while plaintiff credited defendant on his books under two accounts and according to the particular well for which the order was given and for which the payment was made. Plaintiff made some mistakes in some of the items credited, but this was the general plan of his bookkeeping. Defendant argues that there was no liability on its part to pay for either well until the same was completed and turned over or taken over by it, and when the Irelan well was completed and taken over, payment for the work was then due and not before, and the Newblock not being completed at that time, it had a right to apply any payments that had been advanced on the work of the Newblock well to the payment of the amount due on the Irelan well. This argument is based upon the rule that the creditor does not have authority, against the will of the debtor, to apply any payments made on a debt not due to the exclusion of one that is due or part due: citing Carson v. Cook County Liquor Co., 37 Okla. 12, 130 Pac. 303; D'Yarnett v. Cobe, 51 Okla. 113, 151 Pac. 589; Culkin v. Matz (Colo.) 149 Pac. 270. This rule is correct, but it has no application to the case at bar, for the reason that the findings of the court, supported by the evidence, show that the items of advancement made by defendant to plaintiff as the work progressed under the two contracts were made by vouchers, or under circumstances at the time indicating the application of the respective payments. The two contracts were separate and had no connection with each other, and both provided that the work should not be paid for until the well was completed or turned over to defendant, and this fixed defendant's liability to pay at the completion of the work, and it would not have to make any payment before the particular well was completed, but defendant could waive this provision and did waive it, by advancing

payment while the work was in progress. As to the legal status of these advancements in case of breach on the part of plaintiff, this is not a question for us to consider in this connection. It is sufficient to say defendant waived its right to refuse payment until the work was complete on both the wells, and its liability, in carrying out each contract, must be determined, not by the bookkeeping of defendant, but by the facts and circumstances of the payments showing the intentions of the parties at the time the advancements were made. We think the evidence is amply sufficient to sustain the findings of the court as to the manner of the payments and the purposes and intentions of the parties at the time the advancements were made. The cases cited by defendant were not in conflict with this holding, but in accord with it.

2. Defendant further contends that since no liability to pay existed at the time the advancements were made on both wells, and at the time the Irelan well No. 1 was finished and payment for same became due, the Newblock well was unfinished, that it had the right, in the settlement for the Irelan well, to direct that all advancements made on both wells be applied in payment on this well. To meet this contention counsel for plaintiff calls our attention to the rule stated in 21 R. C. L., page 89, section 94, which reads:

"A debtor desiring to avail himself of his right to direct the application of a payment must give the direction therefor either before or at the time of the payment. Otherwise, the right is lost, as after that time the money is no longer his."

To the same effect is the rule stated in 30 Cyc., page 1233, and Waples-Platter Grocery Co. v. Hardin, 85 Okla. 49, 204 Pac. 433. We are of the opinion that these authorities are sufficient to meet the contention of defendant on this point.

3. In defendant's second proposition counsel discuss only error of the court in permitting plaintiff to prove custom as to what was considered ordinary day work in oil well drilling. The question and answer objected to were as follows:

"Q. And all of these charges you have made for day work, are they customary and ordinary day work, such as would be chargeable for day work of this kind? A. Yes, sir."

It is urged that there was no allegation of custom prevailing in the field, and, in the absence of such allegation, "evidence that items of charges other than these specifiedly provided for in the contract are (as) cus-

tomary is not admissible"; citing Smith v. Stewart, 29 Okla. 26, 116 Pac. 182; Gilbert v. Citizens Bank, 61 Okla. 112, 160 Pac. 635.

It will be observed that the contract sued on contained the following provisions:

"The party of the second part further agrees to pay to the party of the first part at the rate of $40 per 12-hour towers and $80 per 24-hour towers on all day work such as shooting, pulling casing, cleaning out, swabbing and such other day work as is usually required in connection with the drilling and final completion of wells in this field.'"

And the amended petition of plaintiff contains the following allegation:

"* * * And further agreed to pay to this plaintiff $80 per day of 24-hour towers, on all day work such as shooting, pulling casing, cleaning out, swabbing, and such other day work as is usually required in connection with the drilling and final completion of wells in this field."

The question and answer complained of were not inconsistent with the language of the contract of the parties, since the items of the account, about which the testimony was given, including other items than day work "for shooting, pulling casing, cleaning out, and swabbing," and since the contract provided for such other items as were "usually required in such work, and the petition pleads the items charged for in the language of the contract, it was not error to prove that they were items of customary and ordinary work." This holding is not inconsistent with the cases cited, supra, by defendant, but in accord with them and with the great weight of authority as cited by plaintiff. Cherokee Grain Co. v. Elk City Flour Mill, 78 Okla. 120, 188 Pac. 1067; Kneeland v. Hetzel, 103 Okla. 3, 229 Pac. 218; Bridges v. Union Cattle Loan Co., 104 Okla. 74, 229 Pac. 805; Number One Oil Co. v. Wilcox, 95 Okla. 227, 219 Pac. 132.

We are of the opinion that the judgment of the trial court should be affirmed.

Defendant in error calls our attention to the fact that plaintiff in error in prosecuting its appeal executed a supersedeas bond with Morland Casualty Company as surety in the sum of $1,800, and conditioned as provided by law, and asks for judgment under the statute and rule 11 of this court. We are of the opinion that defendant in error is entitled to judgment against the surety on this bond.

It is, therefore, ordered, adjudged, and decreed by this court that defendant in error have and recover of and from the Morland Casualty Company as surety on said supersedeas bond the sum of $895.15, with 6 per

cent. interest per annum from October 31, 1922, and all costs, according to the judgment in the above cause, for which let execution issue.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 746. (2) 30 Cyc. pp. 1230, 1233. (3) 17 C. J. pp. 497, § 59; 518, § 81.