# WHEELER & STODDARD *v.* PORTLAND CATTLE LOAN CO.

No. 2759

June 21, 1928.                                        268 P. 46.

*M. B. Moore,* for Appellants:

*E. F. Lunsford,* for Respondent:

## OPINION

By the Court, DUCKER, J.:

This action, which resulted in a judgment against appellants, was commenced by respondent to recover the sum of $15,980.81, with interest thereon, upon a promissory note executed by the appellant, Wheeler & Stoddard, Inc., and also for a decree foreclosing a mortgage on live stock given as security for the payment of the note. The appellants, C. S. Wheeler and Lytton Stoddard, indorsed the note. The mortgage sued on was a second mortgage. For several years prior to the commencement of the suit the respondent had been financing the business and operation of Wheeler & Stoddard, Inc. The respondent during this time advanced all of the moneys with which the former purchased its live stock, sheep and other personal property, and also all of the moneys which were needed and used to pay the salaries and all its operating expenses. The respondent took notes and first mortgages on the property as it was purchased by Wheeler & Stoddard, Inc., and until a late date in 1922 took notes and second mortgages on the same property for the different amounts advanced for operating expenses. These notes and mortgages were executed by Wheeler & Stoddard, Inc., and indorsed by C. S. Wheeler and Lytton. Stoddard. Whenever the Wheeler & Stoddard, Inc., sold any portion of its live stock the money would be sent to respondent without directions as to how the payments should be applied as between the first and second mortgages which covered the running account. By the spring of 1922 the indebtedness, aside from that evidenced by the note in question secured by a second

mortgage, and an open account amounting to something like $30,000, had all been paid by Wheeler & Stoddard, Inc., except $7,584, the balance on a note secured by a first mortgage. In the summer of 1922 the respondent prepared a new note covering the amount of the open or book account and sent it to C. S. Wheeler for the purpose of obtaining his individual indorsement, together with that of Lytton Stoddard. Wheeler returned the note with a refusal to sign it. The respondent notified Wheeler & Stoddard, Inc., to sell its live stock and liquidate its indebtedness, and sent its representative to Reno for that purpose. All of the sheep belonging to Wheeler & Stoddard, Inc., and which were included in the second mortgage, were sold and the money sent to respondent. This amounted to the sum of $31,374, approximately, and was applied by respondent as follows: $7,584 to pay the balance on the note secured by a first mortgage, and the balance, which was something like $23,717, on the open book account.

The action was tried before the court with a jury. Special issues were submitted to and answered by the jury, which were adopted by the court in its findings. Substantially the issues found by the jury and adopted by the court were as follows: That the note and mortgage sued upon had not been paid; that there was no understanding between the plaintiff and the defendant, Wheeler & Stoddard, Inc., and defendant C. S. Wheeler and Lytton Stoddard, or either of them, that the money received from the sale of the mortgaged stock should be applied to the payment of the note and mortgage sued upon in reference to any other account between the parties; that plaintiff notified the defendant, Wheeler & Stoddard, Inc., that the money received from the sale of the stock was not applied on the note and mortgage, and that the latter had notice from the plaintiff, or knowledge that the money so received was applied on the drawing account and other indebtedness between the parties and not upon the note and mortgage; that the plaintiff on or about the 3d day of November, 1922, informed defendants Carl Wheeler and

Lytton Stoddard that it had applied all except about $7,500 of the $31,374 received from the sale of the mortgaged sheep to the current or open account of. Wheeler & Stoddard, Inc., and not to the payment of the note and mortgage sued upon in this case.

This case presents the question whether the appellants were entitled to have the proceeds of the sale of the mortgaged sheep applied to the satisfaction of the mortgage debt.

■ It is a general rule that in the absence of an agreement to the contrary, money realized from the sale of mortgaged property must be applied on the mortgage even without direction to that effect. But there in an exception to this general rule, which is sustained by ample authority. In 21 R. C. L. 97, the author, referring to the general rule which appellants claim is controlling in this case, states:

However, "a mortgagor, if he sees proper, may consent to adopt or ratify an unauthorized application of payment made by his mortgagee creditor of the proceeds of mortgaged property to an unsecured debt. Whether the mortgagor has consented to either is a question of fact to be determined by the jury, and the burden is upon the mortgagee, in either case, reasonably to satisfy the jury of such consent or ratification."

This rule was stated in Boyd v. Jones, 96 Ala. 305; 38 A. S. R. 100.

We are of the opinion that the facts of this case bring it within the exception stated. As said in Cain v. Vogt, 138 Ia. 636:

"Rules which bind the mortgagee who sells upon foreclosure, or takes possession of and sells and converts the security have little application to a case where the payment is made from money obtained by a voluntary sale" of the property.

■ Such is the case here. The sale, while made at the request of the mortgagee, was voluntary. A representative of the respondent merely assisted in finding a buyer. The jury found, as we have seen, that appellants Wheeler & Stoddard, Inc., Carl Wheeler and Lytton

Stoddard, were notified by respondent of the application of the money received from the sale of the mortgaged sheep to the payment of the balance due on the first mortgage and to the running account, and that they had knowledge of such application. They acquired this knowledge by notice in writing from the respondent in November, 1922. This suit was instituted on March 31, 1924. During the intervening time appellants made no protest against the action of respondents, or demand for an application of the money to the extinguishment of the mortgage debt. Their silence in this respect during this long period, with knowledge of the fact that respondent had applied the payment to the first mortgage and on the running account, amounts to a ratification of such application, and they cannot now be heard to insist that the second mortgage debt should have been preferred.

■ The point is made by appellants that the evidence does not support the finding of the jury and court that they received notice from the respondent of the manner in which the money received from the sale of the sheep was applied.

After carefully reviewing the evidence we are of the opinion that it is sufficient to sustain these findings.

Mr. E. E. Williams, the credit manager and assistant secretary of respondent, testified that the money obtained from the sale of sheep covered by the mortgage was received by his company on November 3, 1922, and applied to the payment of the first mortgage and on the running account; that on the same day or the following he sent to Wheeler & Stoddard, Inc., the company's official receipt for the money, to which was attached a statement showing the amount applied in payment of the balance on the first mortgage and the amount applied to the running account; that they never to his knowledge made any objection to the method by which the money was applied. There is also further evidence on this point furnished by an agreement between D. C. Wheeler, Inc., and Wheeler & Stoddard, Inc. This agreement was signed by appellant C. S.

Wheeler for D. C. Wheeler, Inc. C. S. Wheeler was president and general manager of Wheeler & Stoddard, Inc. The agreement was executed on November 13, 1922. It provided for the sale to D. C. Wheeler, Inc., of the remnant of the live stock, consisting of cattle, remaining covered by the second mortgage after the sheep subject to it had been sold, and the proceeds of the sale remitted to respondent. This agreement reads in part:

"* * * made this thirteenth day of November, 1922, between D. C. Wheeler, Inc., by its manager, C. S. Wheeler, and Wheeler & Stoddard, Inc., whose action is hereby approved by the undersigned Parry Black, representative of the Portland Cattle Loan Company, which latter-mentioned company hold the live stock herein mentioned under a mortgage."

It also contains the following clause:

"The title of the above cattle is to remain in Wheeler & Stoddard, Inc., and the mortgage held by the Portland Cattle Loan Company is not to be released until the full amount of money has been turned over to them, i. e., the sum of seven thousand one hundred and ten dollars ($7,110.00)."

■ The property described in the agreement is the same property which was the subject of this action on the foreclosure proceedings in the court below. It was executed something like ten days after the money for the sheep was remitted to respondent and a statement of its application rendered Wheeler & Stoddard, Inc., as testified to by Williams. Consequently, it tended to show by the clauses recognizing that the live stock was still held under a mortgage that appellants had knowledge of the manner in which the money for the sheep had been applied and had acquiesced therein. It is true that C. S. Wheeler testified that Wheeler & Stoddard, Inc., received the receipt for the moneys, but that no statement showing how the money was applied was received. However, on this evidence the question of notice and knowledge was for the jury and court.

■■ It is urged in behalf of appellants, C. S. Wheeler

and Lytton Stoddard, that they, being individual indorsers on the note secured by the mortgage, had the right to have the money derived from the sale of the sheep applied in satisfaction of the mortgage debt. There is no merit in this contention. The law is well established that the right of appropriation of money to one of several debts owing to the same person is a right existing exclusively between the debtor and creditor. 30 Cyc. 1251; Gordon v. Hobart, 2 Story, 243; Wyandotte Coal Co. v. Wyandotte Pav. etc., 97 Kan. 203, 154 P. 1012; H. S. Gile Grocery Co. v. Lachmund (Ore.), 146 P. 519; Wanamaker v. Powers (N. Y.), 79 N. E. 1118; Steiner v. Jeffries (Ala.), 24 So. 37; Thacker v. Bullock Lumber Co. (Ky), 131 So. 271; Pope v. Transparent Ice Co., 91 Va. 79.

The general rule is thus stated in Cyc., supra:

"Third persons, such as guarantors, sureties, indorsers, and the like, secondarily liable on one of the debts, cannot control the application of a payment by either the debtor or the creditor, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons."

"But this right of appropriation," said Judge Storey, in Gordon v. Hobart, "is one strictly existing between the original parties; and no third person has any authority to insist upon an appropriation of such money * * * where neither the debtor nor the creditor have made or required any such appropriation."

In Wyandotte Coal & Mining Co. v. Wyandotte Paving Co., supra, the court said:

"The right of appropriation of payments belongs exclusively to the debtor and creditor, and a third party cannot be heard to complain of a different appropriation from that agreed upon by the debtor and creditor."

The facts of a given case may bring it within an exception to the general rule, such as where the money paid is the money of the third party. But in such a case it has been held that "the creditor must know that he is receiving the third person's money or there must be

facts sufficient to put him on notice." Thacker v. Bullock Lumber Co., supra. The money in this case belonged to the debtor primarily liable, the Wheeler & Stoddard, Inc., C. S. Wheeler and Lytton Stoddard as individuals had no interest in it, and consequently, under the rule applicable, had no right to insist upon an appropriation favorable to them.

Counsel for appellants in his brief makes a number of contentions based on alleged errors at law occurring at the trial. These are not considered for the reason that on a motion formerly heard and decided by this court in this case the memorandum of errors in this court involving errors at law occurring at the trial was struck from the record on appeal.

The judgment should be affirmed, and it is so ordered.