## COOPER v. FEDERAL NAT. BANK OF SHAWNEE et al.

No. 26060.   Dec. 24, 1935.

Rehearing Denied Feb. 28, 1936.

Dudley, Hyde, Duvall & Dudley, for plaintiff in error.

Goode, Dierker & Goode, for defendants in error.

BUSBY, J.   This action was commenced in the district court of Pottawatomie county on the 23rd day of December, 1932, by the Federal National Bank cf Shawnee, Okla., as plaintiff, against Ben Cooper and Tom Cooper, as defendants.   It is an action for money judgment upon a promissory note executed by the defendant Ben Cooper to the plaintiff bank and an instrument of guaranty executed by the defendant Tom Cooper to the bank to secure the payment of the note.

The case was tried to the court without the intervention of a jury and resulted in a judgment in favor of the plaintiff bank and against the defendants above named in the sum of $6,565.16, representing principal and accrued interest, plus $570 attorney's fee. The defendant Tom Cooper alone has appealed and appears in this court as plaintiff in error.   We shall continue to refer to the parties in the order of their appearance before the trial court.

It is conceded by the defendant Tom Cooper that the indebtedness merged in the judgment was originally a valid and proper obligation against him by virtue of the instrument of guaranty involved herein.   He contends, however, that the plaintiff bank erroneously and wrongfully failed to credit on the debt a payment of $1,836.25 and that the trial court erroneously adjudged that he was not entitled to the credit claimed. This contention presents the sole ultimate issue in this appeal.   A decision of this issue requires further reference to the facts.

The defendants in this action are brothers.   In April of 1931 Ben Cooper was engaged in the automobile business in several Oklahoma cities, namely, Shawnee, Wewoka. Holdenville, and Seminole.   In the early history of the businesses they were owned and operated by Ben Cooper individually. Later each was incorporated as a separate corporation and each was operated under a distinct name.   This was the status of the businesses at the time above mentioned. At Shawnee the corporation was the Ben Cooper Motor Company, Inc.; at Wewoka, the Townley Motor Company, Inc.; at Holdenville, the Beall Motor Company, Inc., and at Seminole, the Lloyd Hines Motor Com-

pany, Inc. A large portion of the stock in each of the corporations was owned by the defendant Ben Cooper. He, however, contracted to sell to each of the managers of each of the corporations a few shares of stock in the particular corporation with which the manager was connected. He took the promissory notes of the managers in payment for the stock, but held the shares of stock as security for the debt thus created. The plaintiff bank had been handling the banking business for these corporations, or, at least, a portion of it. and. in connection with such business, they had acquired certain notes secured by chattel mortgages which were termed "customers' notes." These notes had been acquired from the purchasers of automobiles and were secured by chattel mortgages on the automobiles sold. They had been transferred to the bank by indorsement of the motor company selling the paper, which, by virtue of its indorsement, became liable to the bank for the payment of the notes. A large number of these notes were acquired by the bank while Ben Cooper was operating as an individual and were indorsed by him personally.

In April of 1931 the aggregate amount of this commercial paper held was in excess of $35,000.

The defendant Tom Cooper was not associated with his brother in any of the business enterprises above mentioned, although he was engaged in the automobile business at Oklahoma City.

On April 7, 1931, the defendant Ben Cooper procured from the plaintiff bank a loan for the sum of $20,000. The note of Ben Cooper for that sum was executed to the bank on that date. This note was indorsed on the back thereof by the said Ben Cooper Motor Company. At the same time the defendant Tom Cooper, for the purpose of assisting his brother in securing the loan, executed to the bank a separate instrument of guaranty, thereby guaranteeing the payment of the above-mentioned note and the indebtedness evidenced thereby, or any subsequent renewal notes that might thereafter be executed.

At the same time and as a part of the same transaction an instrument referred to by the parties as a trust agreement was entered into between Ben Cooper and Tom Cooper and J. Frank Buck. J. Frank Buck was the president of the plaintiff bank. By the instrument referred to the defendant

Ben Cooper, in substance, transferred and assigned to Tom Cooper and J. Frank Buck, as trustees, his stock in the several corporations above referred to and the several promissory notes executed to him by the different managers of the several corporations above referred to and secured by shares of stock in such corporations. The instrument recited the periodical incapacity or inability of the defendant Ben Cooper to successfully manage and control the operation of the various automobile businesses and authorized the trustees named in the instrument, in the event of the recurrence of such incapacity or inability of the defendant Ben Cooper to successfully operate his business, to take over and exercise the full control and supervision thereof during such incapacity. It likewise authorized the trustees in such event to vote the stock of the said Ben Cooper in any stockholders' meeting. The declared purpose of the trust is set forth in the 5th paragraph of the instrument, which reads as follows:

"Fifth: The primary purposes and intention of this agreement are to secure the payment of the said loan of money (referring to the $20,000 loan), and any other indebtedness due or credit extended to the party of the first part, and to provide for a continuous and unbroken supervision, control, management and operation of the several businesses hereinbefore described for the protection of both the Bank and the party of the first part and in the event the parties of the second part should exercise the powers conferred upon them in the preceding paragraphs hereof and take over the management, control and operation of the said businesses pursuant thereto, then and during such time or times as they may be in charge of such businesses it is expressly understood and agreed that the parties of the second part may exercise their own judgment and discretion as to what should be done for the purposes of liquidating the said indebtedness to the Bank and to do and perform all acts and things in this connection that the party of the first part could do personally."

A short time after the execution of this trust agreement the defendant Ben Cooper was, by virtue thereof, superseded in the management and control of the automobile businesses. It appears, however, that as between the trustees the control and operation of the businesses during the time or times that they were in charge was conducted largely by the defendant Tom Cooper, who, being an automobile man himself, was familiar with the manner in which such businesses should be operated. J. Frank

Buck in his capacity as trustee participated very little, if at all, in superintending or directing the manner in which the businesses should be operated. In connection with all the affairs of the businesses, with the exception of the transaction hereinafter mentioned, he apparently yielded to the judgment of Tom Cooper and acquiesced in the control and management thereof as conducted by Tom Cooper. He did not, however, resign or obtain a release from his joint trusteeship nor was he succeeded as cotrustee by any other individual. It is thus apparent that he continued to possess the powers and to be charged with the duties of a trustee, although he neither asserted nor assumed to exercise such powers, except in connection with the transaction which we shall hereinafter mention.

The evidence is not clear on the question of whether the operation of the automobile businesses by the trustees after the commencement of their control was continuous during the period covered by the transactions herein concerned. There is some testimony in the record supporting the view that the defendant Ben Cooper during portions of such time returned to and assumed to exercise control over such businesses.

In January of 1932 there were delinquencies in payment on portions of the commercial paper above referred to aggregating at that time several thousand dollars. According to the testimony produced by the plaintiff bank, it appears that it had been the custom in handling such delinquencies that when any of the paper became delinquent for a period of ten days such delinquent paper would be taken up by a check given to the bank by Ben Cooper or the said Ben Cooper Motor Company. There is also some testimony in the record that there had been an agreement to supersede this custom made after the trust agreement became effective. Under this alleged agreement it was contemplated that the cars securing the commercial paper would be sold before the motor company would take up the balance due by virtue of the default of the maker of such notes in payment thereof. Be that as it may, there was no release of liability created by the indorsement on such notes.

In January of 1932 the plaintiff bank secured from Ben Cooper, as president of the Ben Cooper Motor Company, a note for approximately $3 000, representing the amount of the then existing delinquencies. This note was signed for the Ben Cooper Motor Company as maker, by Ben Cooper, and it was indorsed on the back thereof by Ben Cooper as an individual. In April of 1932 a renewal note covering the same indebtedness was executed in the same manner. There is some question in connection with these transactions as to whether or not at the time of the execution of these notes Ben Cooper was in control or partial control of the automobile businesses concerned herein, that is, whether they were executed during periods when he had returned and was giving attention to the businesses. We regard these questions of little importance for the reason that the notes did not create a new indebtedness, but in reality only changed the form of an existing indebtedness previously created by indorsement on the commercial paper and becoming a present obligation by subsequent delinquency.

In the meantime it had been decided to close the automobile businesses at Holdenville and Seminole. This was accomplished by trading the unpaid notes for stock previously mentioned for the stock contracted to be bought by the managers and thus placing the entire capital stock in the hands of the trustees. The assets of the Holdenville and Seminole businesses were then transferred to Wewoka and Shawnee, respectively. Subsequently, and in August, 1932, it was decided to close the business at Wewoka and the transaction was accomplished in the same manner, the assets of the Wewoka business being moved to Shawnee. The individual corporations, however, were not dissolved. The evidence does not disclose what steps were taken to protect the creditors of the individual corporations. It is possible that all the debts were paid, except those connected with the transactions herein involved and some indorsed commercial paper held by other corporations which it is unnecessary for us to discuss in this opinion. A group of used cars which were free and clear of encumbrances, was then moved from Shawnee to Oklahoma City, where, under the supervision of Tom Cooper, they were sold at public auction, and the net proceeds of the sale amounted to $1,836.25. There is dispute in the evidence as to whether these cars at the time they were sold were the property of Ben Cooper Motor Company at Shawnee or the Townley Motor Company at Wewoka. Tom Cooper testified that they were the property of the Townley Motor Company of Wewoka, while one of the employees of the corporation familiar with the books and management thereof asserted that prior to the

time they were sent to Oklahoma City for sale they had been transferred and sold to the Ben Cooper Motor Company of Shawnee, which former corporation had received, in consideration thereof, a book credit in connection with an account between the two corporations. The defendant Tom Cooper immediately after the sale transmitted by mail to the plaintiff bank a check representing the proceeds of the sale. The letter accompanying the check read as follows:

"August 11, 1932.
"Federal National Bank,
    "Shawnee, Oklahoma.

"Gentlemen:

"I am enclosing herewith Automobile Investment check in the amount of $1,836.25, and I kindly ask that you apply as credit on the Ben Cooper Motor Company note on which I have guaranteed payment. Yours very truly, Tom Cooper Motor Company, Tom Cooper, President."

In response to this letter Mr. J. Frank Buck replied as follows:

"Shawnee, Oklahoma.
"August 15, 1932.
"Mr Tom Cooper,
    "% Tom Cooper Motor Company,
    "Oklahoma City, Oklahoma.

"Dear Tom:

"Receipt is acknowledged of the check of the Automobile Investment Company in the amount $1,836.25.

"In view of the fact that this check is the proceeds of the sale of the used cars belonging to the corporation of Ben Cooper Motor Company, it is deemed advisable to place this money to the credit of the 'Ben Cooper Motor Company.' Yours very truly, J. F. Buck, President."

In accordance with the statement contained in the letter written by Mr Buck, the proceeds of the sale were deposited to the credit of Ben Cooper Motor Company and shortly thereafter were charged off against the then past due $3,000 renewal note previously mentioned.

It is contended by the defendant Tom Cooper that the plaintiff bank was legally bound to follow the directions contained in his letter transmitting the check and apply the proceeds of the sale upon the $20,000 obligation guaranteed by him, which, incidentally, had, in the meantime, been reduced to approximately $6,000 and a renewal note executed for that amount, the latter note being the basis of this action against Ben Cooper.

It is to be noted in connection with the letter of transmittal that the same was signed by Tom Cooper as president of the Tom Cooper Motor Company. Of course, he had no power to direct the method of applying the money as an officer of a corporation in no wise connected with the transactions herein involved, but we think, in fairness to Mr. Cooper, that it may be assumed that he was intending to act in such capacity as would give to his attempted direction the greatest legal effect, namely, in his capacity as cotrustee. Likewise, a similar presumption should be indulged in favor of Mr. Buck, who signed his letter as president of the Federal National Bank. Thus the act of Mr. Buck in refusing to follow the direction of Mr. Cooper will be presumed to have been committed in his capacity as cotrustee. We thus have a situation in which two cotrustees of equal authority under the instrument of trust failed and refused to agree upon a matter connected with the execution of their trust, namely, which of two debts a payment shall be applied to, both debts being obligations of the same debtors, namely, Ben Cooper and the Ben Cooper Motor Company, both being past due and both being payable to the same person, namely, the plaintiff bank. It is likewise apparent that the liquidation of both of the debts was within the contemplation of the trust agreement, which contemplated not only the liquidation of the $20,000 obligation therein mentioned, but of "any other indebtedness due or credit extended to the party of the first part."

It is well-settled law that a debtor may direct the application of payments made by him to a creditor holding more than one debt. See Waples-Platter Grocery Co. v. Hardin et al., 85 Okla. 49, 204 P. 433; Cleveland Nat. Bank v. Amos, 37 Okla. 674, 133 P. 204; Southern Surety Co. v. Corbit et al., 142 Okla. 103, 285 P. 949. But the debtor in this case was controlled by two cotrustees who disagreed upon the manner in which the payment should be applied. Cotrustees cannot act independently of one another and the disagreement between the trustees in this case renders the act of each a nullity. As was said in the case of Colburn v. Grant, 181 U. S. 601-606, 45 L. Ed. 1021-1023, quoting from the earlier case of Colburn v. Grant, 16 App. D. C. 107:

"Cotrustees may not act independently of one another, nor ignore each other in the management of the trust. The trust is entitled to the united judgment, discretion, and

ability of all the trustees selected. For this reason they may not delegate discretionary powers among themselves." See, also, Wilbur v. Almy, 12 How. 180, 13 L. Ed. 944-945.

There is, therefore, in this case an absence of any binding direction from the debtor determining which of two debts the payment should be applied to. The question then arises: Did Tom Cooper, by reason of the fact that he guaranteed the payment of the $20,000 debt, have the right to demand in his capacity as guarantor that the $1,836.25 payment be applied on that debt? The answer to the question is no. In the case of Wyandotte Coal & Lime Co. v. Wyandotte Paving & Construction Co. (Kan.) 154 P. 1012, it was said in paragraph 1 of the syllabus by the court:

"Third persons such as guarantors, sureties, indorsers, and the like, secondarily liable on one of several debts, cannot control the application which either the debtor or the creditor makes of a payment, and neither the debtor nor the creditor need apply the payment in the manner most beneficial to such persons." See, also, Wheeler & Stoddard, Inc. et al. v. Portland Cattle Loan Co. (Nev.) 268 P. 46; Southwestern Surety Ins. Co. v. Neal et al., 81 Okla. 194, 197 P. 489.

The rule is, of course, otherwise where the guarantor or surety is individually furnishing the money for the payment or has a lien or equity therein which is known to the creditor. First Nat. Bank of Okla. City v. Farmers Nat. Bank of Chickasha et al., 115 Okla. 136, 241 P. 783; 21 R. C. L. 109.

In the absence of a specific direction as to the application of payments by the debtor, the creditor is (subject to qualifications not herein involved) authorized to apply a payment to either of two or more existing debts. 48 C. J. 647; Red Bank Oil Co. v. Cook, 115 Okla. 163, 242 P. 198; First Nat. Bank of Okla. City v. Farmers Nat. Bank of Chickasha, 115 Okla. 136, 241 P. 783; Jackson et al. v. Moore, 39 Okla 234, 134 P. 1114. Thus, as applied to this case, there being no valid direction of the debtor to the application of the payment herein involved, the plaintiff bank was authorized to determine which of the two existing debts the same should be applied to. Nor do we think the rights of the parties are in any measure altered by the particular method which was used to accomplish the application in connection with this transaction, namely, by depositing the sum received to the credit of said Ben Cooper Motor Com-

pany and then charging against the account the amount due on the $3,000 promissory note. See First State Bank v. Hunt, 77 Okla. 4, 185 P. 1089; Gillette v. Liberty Nat. Bank of Tulsa, 95 Okla. 76, 218 P. 1057.

The defendant Tom Cooper herein also invokes another rule announced in the case of Waples-Platter Grocery Co. v. Hardin, supra, the substance of which rule is that "where both debtor and creditor have failed to direct the application of a payment, the duty of making the application devolves on the court, and such payments should be applied according to the justice and equity of the case." The rule is inapplicable to this case, for the reason that the creditor herein has very definitely made an application of the payment. It is therefore unnecessary for us to consider the various equities involved in the case, on which questions a great deal may be said and is said in the briefs in favor of both of the parties to this transaction.

The judgment of the court is in accord with the views herein announced, and the same is hereby affirmed.

McNEILL, C. J., OSBORN, V. C. J., and WELCH, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, and PHELPS, JJ., absent.