McGEORGE et al. v. BIGSTONE GAP IMP. CO.

(Circuit Court, W. D. Virginia. July 27, 1898.)

1. AUTHORITY OF TRUSTEES—INSTITUTION OF SUITS.

Where property is vested in three trustees, with power to bring suits, etc., one of them has no authority to institute a suit without the knowledge and consent of his co-trustees.

2. EQUITY—DECREE FOR COSTS.

Where persons are made parties complainant to a bill without their knowledge or consent, and a decree is entered against them for costs, such decree is a nullity as to them, and they may have their names stricken from the record on filing a petition therefor in the cause.

3. SAME—AUTHORITY OF ATTORNEY.

An attorney employed to bring a suit, without specific instructions as to what court to commence it in, may, in the exercise of a sound discretion, resort either to a state or a federal court.

These petitions were filed in the case of William McGeorge, Jr., and others against the Bigstone Gap Improvement Company, by William McGeorge, Jr., Joseph B. Altimus, George Burnham, and Henry Lewis, praying that their names be stricken from the record and proceedings in said cause, and that they be relieved and discharged from any and all liability on account of costs or otherwise, or in any wise, in said suit.

H. S. K. Morison, for petitioners.

Bullitt & Kelly, for defendant.

PAUL, District Judge.   These petitions, and the evidence taken thereon, present the following facts:

On May 27, 1893, the bill was filed in this suit, and the following persons were named as plaintiffs, to wit:   William McGeorge, Jr., who sues in his own right and as trustee, etc., John C. Bullitt, Samuel Dickson, Joseph I. Doran, Joseph B. Altimus, George Burnham, Charles C. Harrison, Dr. William Pepper, John H. Dingee, Sabin W. Colton, Jr., and Henry Lewis, all citizens of the state of Pennsylvania, suing for themselves and all other creditors and stockholders who would become parties and contribute to the cost,—against the Bigstone Gap Improvement Company (hereafter called the "Improvement Company"), a corporation under the laws of Virginia.   The bill alleged mismanagement of the business of the defendant company, its insolvency, and prayed for the appointment of a receiver. Temporary receivers were appointed, a temporary injunction order issued, and a rule awarded requiring the defendant company to appear on the 13th of June, 1893, to show cause, if any, why the temporary appointment of receivers should not be made permanent.   The rule to show cause was heard on the 13th of June, 1893, and on September 4, 1893, a decree was entered by Judge Goff dissolving the injunction, providing for the settlement of their accounts and the discharge of the temporary receivers, and dismissing the bill at the costs of the complainants.   At the May term, 1895, of this court, a decree was entered against the complainants McGeorge, Altimus, Burnham, and Lewis for the whole of the costs of the suit, and execu-

tion was awarded in favor of the defendant company. The names of Bullitt, Dickson & Dale, a law firm of Philadelphia, appeared on the bill as solicitors for the plaintiffs. These attorneys appeared by counsel before the court on the 13th of June, 1893, and stated that their names had been used without their authority; and, on motion, their names as attorneys were withdrawn from the record. On the 4th of September, 1893, in the decree entered as of that date, the names of J. C. Bullitt, Joseph I. Doran, and Samuel Dickson were stricken from the bill for the reason that they had been made complainants without their authority. At the October term, 1893, for the same reason, the names of John H. Dingee and Sabin W. Colton, Jr., were stricken from the bill. And subsequently the names of Dr. William Pepper and Charles C. Harrison disappeared from the proceedings in the cause,—Pepper's by death, and Harrison's by request. Thus, when the decree for costs was entered at the May term, 1895, the only remaining complainants on the record were the said William McGeorge, Jr., Joseph B. Altimus, George Burnham, and Henry Lewis, against whom the decree was entered.

The evidence shows that, a short time prior to the institution of the suit, Mr. M. B. Wood, of Bristol, Va., who held some of the bonds and stock of the Bigstone Gap Improvement Company, had a conference with the complainant McGeorge about bringing a suit, and having receivers appointed for the Improvement Company; that, in that conference, McGeorge said he wished F. S. Blair, a prominent attorney of Wytheville, Va., to be employed as counsel. McGeorge gave Wood the names of the persons to be made parties complainant in the bill. After the conference between Wood and McGeorge, the latter returned to Philadelphia; and shortly afterwards he had a conference with his co-trustee, Samuel Dickson, in a deed of trust executed by William D. Jones to secure a loan (which trustees held some of the bonds of the Improvement Company as collateral for said loan), as to the propriety of joining the people they represented in the proposed suit; having previously agreed with Wood that, if he (McGeorge) and Dickson agreed as to the appointment of a receiver for the Improvement Company, he (McGeorge) was to telegraph Wood, using a cipher message, saying, "Wheat is going up." After McGeorge had met and talked with Dickson on the subject, he wrote to Wood as follows:

"Philadelphia, May 22d, 1893.

"Hon. M. B. Wood—My Dear Judge: I had an opportunity to-day, for the first time, to talk over the matter of the receivership of Big S. G. Imp. Co. with Mr. Dickson. Dr. Bailey was present. Mr. Dickson wanted us to agree on J. K. Taggart for receiver. He thought the V. C. & I. Co. would insist upon that as a sine qua non. We suggested Major Wood, and it was finally agreed that Major Wood and J. K. Taggart should be made receivers. In that event it would be proper to have the Virginia Coal & Iron Co. made parties, as Taggart would represent them. I did not dare to telegraph all this, and so write promptly. Yours, very truly,

"[Signed]                                        Wm. McGeorge, Jr."

On the 25th of May, 1893, Mr. Blair, in order, he says, to be sure that the list of names was correct, sent from Richmond, Va., to McGeorge the following telegram:

"May 25, 1893.

"To William McGeorge, Jr., Bullitt Building, Philadelphia, Pa.: If Judge Goff will appoint Wood and Taggart on a bill by you as trustee, and any other noncitizens, must I file it and get order? Give names of plaintiffs.

"F. S. Blair."

The complainant McGeorge not being in the city of Philadelphia at the time, the telegram was delivered to his son, Arthur McGeorge, who answered as follows:

"Dated Philadelphia, Pa., 26 May, 1893.

"To F. S. Blair, Richmond, Va.: McGeorge in New York. Dickson says take instructions from Judge Wood. Arthur McGeorge."

Wood having previously furnished Blair with the list of names given him by McGeorge, Blair presented the bill, with the names inserted, to Judge Goff; and the temporary receivers were appointed, and the injunction granted.

For convenience, the court will consider first the joint petition of Altimus, Burnham, and Lewis. The evidence, taken in connection with this petition, establishes certain facts about which there can be no question. It is clearly shown that the petitioners, Altimus, Burnham, and Lewis, who were made complainants in the bill filed in this suit, did not themselves employ counsel to bring the suit, or authorize the same to be brought, either themselves or through McGeorge; that they did not know such a suit had been instituted until over two years after the suit had, by decree entered by Judge Goff, been dismissed at the costs of the plaintiffs; that, on learning that they had been made parties complainant in this suit, they took immediate steps to have their names stricken from the record, and to be relieved from the payment of costs, and from any other liability accruing therein, on the ground that the use of their names as complainants was without their authority, and was an imposition upon the court. Of these three petitioners, Altimus testifies that the first time he heard of the pendency of the suit was on October 15, 1895. Burnham and Lewis testify that they knew nothing of the institution of such a suit until December 9, 1895. McGeorge testifies that prior to these dates he had not spoken to any of them about the institution or pendency of the suit. But counsel for the defendant insist that McGeorge had authority to institute this suit in the name of himself, Altimus, Burnham, and Lewis, on the ground that these persons were trustees in what is known as the "Altimus-Benson-McGeorge Trust." Under this trust deed, entered into in 1883, it appears that eight or ten persons owning undivided interests in certain lands in Virginia and Kentucky, for the purpose of being able to handle it conveniently, agreed to convey it to these trustees,—the conveyance to be made to the trustees as individuals; that the public was not to know that they held the land in trust; that the trustees were to have full power to sell, lease, and convey these lands, and full power to bring and defend any and all suits in reference to the trust property; that a part of this trust property was sold to the defendant, the Improvement Company,—the trustees receiving as consideration therefor certain bonds and stocks of the Improvement Company, which were held by said trustees at the time

of the institution of this suit,—and in this way they were interested in the affairs of the Improvement Company. It further appears from said evidence that said trustees were interested as individuals in the trust property, but, as the trust property was held by them as individuals, all suits were brought in their names as individuals.

It is contended that the evidence shows that the other trustees delegated their authority to their co-trustee, McGeorge; that for years prior thereto, and at the time the suit was brought, all of the affairs of the trust were managed by him; that he had full charge, not only of the ordinary business of the trust, but also of its legal matters; that he frequently directed settlements and the bringing of suits without consultation with his co-trustees, and that his actions in so doing had never been disapproved by his co-trustees; and that he was generally understood by the public at large to have full authority in the premises. The claim of delegated authority cannot apply to Burnham, for the evidence shows that he, from the organization of the trust to the present, has never been a trustee. The trustees at the time the suit was instituted were McGeorge, Altimus, and Lewis. The strongest evidence to sustain the position that the other two trustees had delegated their authority to McGeorge, and that he had general charge of the affairs of the trust, are the depositions of two practicing attorneys who were formerly counsel for the Altimus-Benson-McGeorge trust,—one from the year 1884 to 1888 or 1889; the other from September, 1889, to August, 1890,—as local counsel, having been previously employed for several months in conjunction with the then local counsel. The court has carefully considered these depositions, and the objections taken to the same by counsel for the petitioners; and it considers that they are insufficient to establish the fact that the co-trustees of McGeorge had delegated to him the authority vested in the three by the trust deed. The only other witness introduced by the Improvement Company to prove that McGeorge had authority to act for his co-trustees is D. C. Anderson, the agent in Virginia of the Altimus-Benson-McGeorge trust. He is asked:

"Q. Did you get all your instructions with reference to the interests of the Altimus, Benson, and McGeorge trust from Mr. McGeorge? A. These instructions came through Mr. McGeorge, but they were, as I always understood them, the instructions of the trustees as a body. I was employed, not by Mr. McGeorge personally, but by the board of trustees, at a regular meeting of the trustees. Business of importance I submitted to the trustees, through Mr. McGeorge. In answering my communications, he would invariably say that he had consulted Mr. Altimus and Mr. Lewis, or either of them, and that they had decided the matters submitted."

Again, after speaking of a sale he had made of some white oak timber, he is asked:

"Q. Did you not consider this as being done under Mr. McGeorge, and did you observe and abide by the directions which he gave you? A. I considered that I was employed by the trustees, and, as I have already stated, all business of importance was submitted to them, through Mr. McGeorge; and when Mr. McGeorge wrote me, directing me to do anything, it was as the result of the action of the trustees, or of conferences between him and Mr. Altimus and Mr. Lewis, or either of them. I have no recollection at all of having submitted any proposition or matter of business of any importance in which Mr.

McGeorge, in sending me instructions, did not state that he had submitted the matter to Mr. Altimus or to Mr. Lewis, his co-trustees, or either of them."

Altimus, one of the trustees, is asked in his deposition:

"Q. Had there ever been any consultation between you and Mr. McGeorge, as co-trustees, with reference to the bringing of that suit? A. No. Q. Please state whether or not Mr. McGeorge had any authority from you—either special or general—to bring suits of this character? A. None whatever."

Again, on cross-examination:

"Q. Do you mean that Mr. McGeorge consulted you about everything? A. Everything. Q. Is it not a fact that Mr. McGeorge really only consulted you about matters of importance, and that the ordinary business he attended to himself? A. In all the business generally we held a consultation as trustees."

Lewis, the other trustee, states in his deposition that he never authorized McGeorge to bring suits in his behalf, and that there had never been any consultation between him and McGeorge as to bringing this suit. McGeorge, in answer to the question, "Who had actual charge of the business of the Altimus, Benson, and McGeorge trust?" says:

"No one had actual charge, in the sense of having discretionary power in regard to it. Everything that was done was done upon consultation with the trustees; but the trustees paid me a salary to carry on the correspondence, and announce their conclusions and agreements from time to time."

This evidence disposes of the contention that McGeorge was authorized by his co-trustees to exercise the authority vested in the three trustees. It is scarcely necessary to cite authority for the proposition that a power conferred upon three trustees cannot be exercised by one only. The doctrine is thus stated in 1 Perry, Trusts, § 411:

"Where a settlor vests his property in several co-trustees, they all form, as it were, one collective trustee. Therefore they must perform their duties in their joint capacity, even in making a purchase. In law there is no such person known as an acting trustee, apart from his co-trustees. All who accept the office are acting trustees. If any one trustee who has accepted refuses to join in the proposed act, or is incapable, the others cannot proceed without him, but an application must be made to the court. So, if trustees bring suits or defend suits in court, they must act jointly. * * *"

The petition of McGeorge to be relieved from the payment of costs, in view of the facts already recited, requires but brief discussion. The evidence shows that he was one of the active movers in bringing the suit. Without his co-operation, it is doubtful if any proceedings would have been commenced. Through Wood, he employed Mr. Blair as attorney for the complainants, and furnished a list of names of persons to be made parties plaintiff. The day the receivers were appointed and the injunction granted, Dr. Bailey, who, McGeorge wrote to Wood, was present at the interview which McGeorge had with Dickson, wrote to McGeorge from Richmond, telling him what had been done. A copy of a newspaper published at Bigstone Gap, of June 1, 1893, was mailed to, and received by, him. This newspaper contained a number of articles on the appointment of the receivers; giving the name of McGeorge as one of the plaintiffs, and criticising him as the chief instigator of the proceedings. McGeorge's letters of October 31 and of November 11, 1893, to Ayers

show that he knew of the pendency of the suit, and of the proceedings had prior thereto. This was two years before the decree for costs was entered against him. Yet he took no steps looking to his release from the cause as one of the complainants improperly made so, or to prevent the rendering of the decree for costs. In his deposition he states that he objects to the suit because the bill contains scandalous matter, of which he was not cognizant, and that the suit was brought in the federal court, instead of, as he expected, in a state court. But the evidence fails to show that he gave his counsel any specific or general instructions as to the court in which he wished the suit to be brought. In a case like this, where both the state and the federal court have concurrent jurisdiction, the attorney bringing the suit may, in the absence of instructions from his client, in the exercise of a sound discretion, choose either forum. The Improvement Company, in its answer, insists that the decree for costs which it is sought to annul was a final decree, and ended the cause, and that therefore this court cannot entertain these petitions to annul that decree. The court holds that the decree, as to Altimus, Burnham, and Lewis, was a nullity, and that it has jurisdiction in this proceeding to so declare the same. In Shelton v. Tiffin, 6 How. 163, the supreme court says:

"An appearance for a party not served, by counsel, who has no authority to waive process and defend the suit, does not bind the party, and the judgment or decree is a nullity."

The principle is thus stated in Black, Judgm.:

"If an attorney, assuming without authority to act for the plaintiff, brings a suit, and loses it, the defendant recovering a judgment for costs, equity will restrain the enforcement of such judgment in the same circumstances which would induce it to relieve the defendant in the converse case." Black, Judgm. § 374.

The court sees no ground for sustaining the petition of William McGeorge, Jr., and the same will be dismissed. The court sustains the petition of Joseph B. Altimus, George Burnham, and Henry Lewis. An order will be entered setting aside and annulling the decree heretofore entered, requiring these petitioners to pay the costs of this suit.