CHARLES D. JAFFEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUIS J. JAFFEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JULIUS SCHWARTZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HARRY H. SCHWARTZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26587–26590. Promulgated September 28, 1929.

*Harry T. Lore, Esq.,* and *Harvey L. Rabbitt, Esq.,* for the petitioners.

*J. E. Mather, Esq.,* and *J. A. Lyons, Esq.,* for the respondent.

676

OPINION.

LITTLETON: The respondent has asserted deficiencies against the petitioners as transferees of Schwartz & Jaffee, Inc., under section 280 of the Revenue Act of 1926, which provides, among other things, that:

SEC. 280. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same

manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

\* \* \* \* \* \* \*

(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period,—then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

The returns of Schwartz & Jaffee, Inc., for the fiscal years ended October 31, 1919, and October 31, 1920, were filed on March 1, 1920, and February 3, 1921, and the five-year periods for assessment against that company expired on March 1, 1925, and February 3, 1926. Assessment was not made within that period and no deficiency was asserted against the alleged transferees within one year after the expiration of the five-year periods. But the Commissioner contends that written consents were executed and filed on behalf of Schwartz & Jaffee, Inc., which operated to extend the period within which assessment and collection could be made against and from that company, and that the deficiencies were asserted against the petitioners within the time prescribed by section 280 of the Revenue Act of 1926.

The contention of the petitioners is that the consents are invalid for the reason that they were signed by C. D. Jaffee as treasurer of the corporation when he did not hold such position and when he was without authority to so act for the corporation. To state their position more explicitly, it is that when the corporation took the formal action and filed the necessary papers as required by statute for voluntary dissolution and received a certificate from the State of New York that the statute had been complied with, the old officers, of whom C. D. Jaffee was one, ceased to exist as such, and that during the period of dissolution the corporation was governed by a board of directors acting as trustees for the stockholders in the liquidation, which could only act as a body in authorizing the signing of the consents in question and that since the directors did not authorize C. D. Jaffee to sign the consents, his action in signing them

was without force and effect to extend the time for the assessment of taxes against the corporation.

Section 221 of the General Corporation Law of.the State of New York (McKinney's Consolidated Laws of New York), provides as follows:

SEC. 221. *Dissolution of stock corporation before expiration of time limit.*—Any stock corporation, except a moneyed or a railroad corporation, may be dissolved before the expiration of the time limited in its certificate of incorporation or in its charter as follows:

1. The board of directors of any such corporation may at a meeting called for that purpose, upon at least three days' notice to each director, by a vote of a majority of the whole board, adopt a resolution that it is in their opinion advisable to dissolve such corporation forthwith, and thereupon shall call a meeting of the stockholders for the purpose of voting upon a proposition that such corporation be forthwith dissolved. Such meeting of the stockholders shall be held not less than thirty nor more than sixty days after the adoption of such resolution, and the notice of the time and place of such meeting so called by the directors shall be published in one or more newspapers published and circulating in the county wherein such corporation has its principal office at least once a week for three weeks successively next preceding the time appointed for holding such meeting, and on or before the day of the first publication of such notice, a copy thereof shall be served personally on each stockholder, or mailed to him at his last known post-office address. Such meeting shall be held in the city, town or village in which the last preceding annual meeting of the corporation was held, and said meeting may, on the day so appointed, by the consent of a majority in interest of the stockholders present, be adjourned from time to time, and notice of such adjournment shall be published in the newspapers in which the notice of the meeting is published. If at any such meeting the holders of two-thirds in amount of the stock of the corporation, then outstanding, shall, in person or by attorney, consent that such dissolution shall take place and signify such consent, in writing, then such corporation shall file such consent, attested by its secretary or treasurer, and its president or vice-president, together with the powers of attorney signed by such stockholders executing such consent by attorney, with a statement of the names and residences of the then existing board of directors of said corporation, and the names and residences of its officers duly verified by the secretary or treasurer or president of said corporation, in the office of the secretary of state.

2. The secretary of state shall thereupon issue to such corporation, in duplicate, a certificate of the filing of such papers and that it appears therefrom that such corporation has complied with this section in order to be dissolved, and one of such duplicate certificates shall be filed by such corporation in the office of the clerk of the county in which such corporation has its principal office; and thereupon such corporation shall be dissolved and shall cease to carry on business, except for the purpose of adjusting and winding up its business. The board of directors shall cause a copy of such certificate to be published at least once a week for two weeks in one or more newspapers published and circulating in the county in which the principal office of such corporation is located, and at the expiration of such publication, the said corporation by its board of directors shall proceed to adjust and wind up its business and affairs with power to carry out its contracts and to sell its assets at public or private sale, and to apply the same in discharge of debts

and obligations of such corporation, and, after paying and adequately providing for the payment of such debts and obligations, to distribute the balance of assets among the stockholders of said corporation, according to their respective rights and interests.

3. Said corporation shall nevertheless continue in existence for the purpose of paying, satisfying and discharging any existing debts or obligations, collecting and distributing its assets and doing all other acts required in order to adjust and wind up its business and affairs, and may sue and be sued for the purpose of enforcing such debts or obligations, until its business and affairs are fully adjusted and wound up.

It is first insisted by petitioners that, pursuant to the foregoing statutory provision, Schwartz & Jaffee, Inc., was dissolved on March 8, 1922, when a certificate was issued by the Secretary of State of New York to the effect that the corporation had complied with the section " in order to be dissolved," but we are unable to agree that this worked the dissolution of the corporation. Not only does the statute provide that the corporation shall remain in existence after that time for the purpose of winding up its affairs, but the evidence is conclusive to the effect that the corporation was in process of liquidation at least up until the time the waivers were signed. What we have, therefore, is a corporation continued in existence " for the purpose of paying, satisfying and discharging any existing debts or obligations, collecting and distributing its assets, and doing all other acts required in order to adjust and wind up its business and affairs," and our question is whether a consent signed by an individual who was an officer of the corporation prior to filing the dissolution papers referred to in our findings and who became one of the directors in liquidation, is valid when signed by this individual without the knowledge of, or specific authorization from, the other liquidating directors.

We do not think it could be seriously questioned that the settlement of its tax liability would come within the scope of the purposes for which a corporation would be continued in existence under section 221 of the New York statute as referred to above. The corporation could not transact new business, but it could do all things necessary to wind up its affairs, one of which would be the settlement of taxes on account of business done during its active existence and the adjustment of this tax controversy, which was known to at least three of the four directors prior to March 8, 1922. Apparently the same individuals who took care of such matters prior to the filing of the dissolution papers were functioning in a similar capacity during the period with which we are concerned. Jacob P. Raff, who was employed as comptroller of Schwartz & Jaffee, Inc., and assisted in the preparation of the returns in question, continued to look after tax matters during the dissolution period. It was he with whom the revenue agent conferred with

respect to the first consents furnished and it was he who presented the consents to C. D. Jaffee for signature, and had the corporate seal attached thereto. The letters transmitting the consents to the Commissioner were dictated by Mr. Raff, and mail from the Commissioner with respect to the matter in controversy was sent to him, except in some instances where it apparently went direct from the post office to the accountants who had charge of the liquidating office. With respect to C. D. Jaffee, we find that as treasurer of Schwartz & Jaffee, Inc., he signed the returns for the years with which we are concerned, and also signed all of the waivers before us in the same capacity. He testified that he was treasurer of the corporation during its entire corporate existence. That this included the period during which the corporation remained in existence for the purpose of dissolution is shown from the minutes of the one meeting held by the board of directors as liquidators wherein a resolution was adopted to the effect that checks were to be signed by the "President, Mr. Julius Schwartz, and the Treasurer, Mr. C. D. Jaffee." These were the same offices held by these individuals prior to March 8, 1922, and there is nothing in the record to indicate that they did not continue in these positions by virtue of action taken prior to that date, rather than by action of the board of directors in their capacity as liquidators. Further, when the revenue agent called in regard to the consents he was told that C. D. Jaffee was treasurer and not only the consents, but also letters from the corporation to the Treasury Department, were signed by him in that capacity.

When we consider the foregoing facts, together with the entire record in the case, we are of the opinion that the consents in question were executed in a manner binding on the corporation. We can agree with the petitioners' contention that by section 221 of the New York statute the persons in this instance who were charged with the duty and authority of liquidating the corporation and winding up its affairs were the board of directors and that they had authority to act as a body and not individually, but we fail to see where this results in any different situation from that which ordinarily prevails with respect to a board of directors. In the usual case, where a corporation is continuing in active existence, the final governing body is the board of directors and not the officers, for the reason that the officers are selected by the board of directors. As stated by Cook on Corporations, p. 2924:

* * * The stockholders, indeed, have very few functions. The board of directors have the widest of powers. All of the various acts and contracts which a corporation may enter into are entered into by and through the board of directors. The board of directors make or authorize the making of the

notes, bills, mortgages, sales, deeds, liens, and contracts generally of the corporation. They appoint the agents, direct the business, and govern the policy and plans of the corporation. A by-law that employees shall participate in surplus earnings may constitute a contract with them if they have performed. The power of directors to delegate their discretionary powers is discussed elsewhere. The directors elect the officers, and in this connection it may be added that "at law there is no limit to the number of offices which may be held simultaneously by the same person, provided that neither of them is incompatible with any other." They institute, prosecute, compromise, or appeal suits at law and in equity which the corporation brings or has brought against it. It is doubtful whether the board of directors can share the exercise of their powers with a so-called board of managers.

And from the same authority we find that they can act only as a board when duly assembled and that the action of the majority governs. But this eminent author states further, p. 2926, that:

A single director has no power to contract for the corporation. It is perfectly legal, however, for a board of directors to delegate to an agent the power to make a contract, and this agent may, of course, be a director as well as a third person. The board of directors and the corporation are bound also by the contracts of a director or other person who has assumed to contract for the company, and for some time has been allowed by the board to so act and contract. The employment of an assistant manager need not be formally authorized by the board of directors where he has performed the duties in the ordinary course of business. So also the board of directors and the corporation are bound by an unauthorized agent's contract when the contract is acquiesced in or the benefits of that contract are accepted; or when the corporation expressly ratifies and confirms the contract.

That similar principles would apply to the board of directors of a New York corporation when in voluntary dissolution is shown by the following statement from *Security Trust Co.* v. *Pritchard*, 201 App. Div. 142; 194 N. Y. S. 486, where the section before us was likewise under consideration:

* * * A corporation can only act through its directors or by some one appointed in their place, and they are likewise given power in said section, and directed to proceed " to adjust and wind up its business and affairs with power to carry out its contracts, and to sell its assets at public or private sale, and to apply the same in discharge of debts and * * * to distribute the balance of assets among the stockholders." They are, of course, in a sense trustees, because they have no power to perform further corporate duties or do new business, but must act only as liquidators, and their powers are derived from this section providing for the dissolution.

We are not advised as to what action the board of directors of Schwartz & Jaffee, Inc., took with respect to the appointment or election of officers, but the minutes of the one meeting held by them as liquidators show that they recognized the same president and treasurer who had held these offices prior to the filing of the dissolution papers. Certainly they (the board of directors) must have

delegated authority to officers or agents to act for them in matters pertaining to the liquidation or acquiesced in a continuation of the old officers in their same positions, since the corporation was still in process of liquidation in 1925 and only one meeting of the board of directors as liquidators had been held, that having been within one month after the dissolution papers were filed in March, 1922. Under such circumstances, we do not think that specific authority was required for C. D. Jaffee to sign the consents any more than would have been true had the corporation been continuing its active existence. He had signed the original returns as treasurer, which position the board of directors recognized him as holding after the dissolution papers were filed and in which capacity he likewise signed the waivers. It is true that the other directors had no knowledge that the waivers were asked for or signed, but as to a similar situation we said in *American Feature Film Co.*, 11 B. T. A. 1271:

\* \* \* Petitioners argue that the consents executed by the president of the petitioners were invalid because there was no specific action by the directors of the corporation authorizing the same, but we think this contention is without merit. The general rules applicable to the determination of the validity of contracts are not applicable in the determination of the validity of the consent to a later determination, assessment, and collection of additional tax under the various revenue acts. We think Congress used the word "consent" advisedly. To consent implies the idea of acquiescence to a matter of conduct, the assent to the performance of an act or duty in other than the usual or customary manner, or at a time other than that prescribed, and we think a consent to a later determination and assessment of tax of a corporation signed by an officer of the corporation in the regular course of business, although without specific authorization by the board of directors, is valid and effectual to suspend the operation of the statute of limitation for such period as may be specified therein. It is well known that in the general conduct of affairs of corporations it is customary for the corporate officers to perform many acts that partake of agreements or consents, as may be for the best interest of the corporation, and it would be unreasonable to suppose that every act of regularly constituted officers of a corporation must have specific approval by vote of the board of directors. A consent to a determination and assessment of whatever tax may be due by the corporation beyond the period specified in the statute is nothing more than approval by the officer or officers of a corporation of a policy to be pursued in the conduct of affairs of a corporation in respect of such matters or the concurrence or acquiescence by such officer on behalf of the corporation to the performance by the Commissioner at a later date of an act which the statute prescribes shall otherwise be performed by him within a specified time. \* \* \*

See, also, *United States* v. *Kemp*, 12 Fed. (2d) 7, which involved a corporation in dissolution under a statute in many respects similar to the one before us, wherein the court upheld the validity of waivers signed by officers of the corporation without authorization from the board of directors. Also *Liberty Baking Co.* v. *Heiner*, 34 Fed. (2d) 513, wherein the court said that "Surely, the signing of such a tax waiver, in order to secure further consideration of corporate

tax liability, falls within the ordinary power of executive officers, and would not require additional special authority from the board of directors."

In view of the foregoing, we are of the opinion that the consents executed by C. D. Jaffee as treasurer, who was also one of the directors, are sufficient to extend the statute of limitations for the assessment and collection of taxes against Schwartz & Jaffee, Inc., for the years before us. The proceedings will be restored to the calendar for further action on the issues raised by the pleadings.

Reviewed by the Board.

MARQUETTE and TRAMMELL dissent.