JONATHAN GODFREY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FIRST NATIONAL BANK OF BRIDGEPORT, CONN., EXECUTOR, ESTATE OF CHARLES G. WALDO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18720, 18721. Promulgated January 14, 1930.

*Harvey K. Zollinger, Esq.*, for the petitioners.
*J. E. Mather, Esq.*, and *J. A. Lyons, Esq.*, for the respondent.

OPINION.

LANSDON: Except for the question of the statute of limitations, the evidence fully sustains the determinations of the respondent with respect to the liability of the petitioners as transferees of the assets of the delinquent corporation. Petitioners concede that upon dissolution of the corporation they distributed its assets to themselves and the evidence supports our findings that the value of the property received by each of these petitioners at the time was equal to and in excess of the amount of the liability determined against him. We also find that at the time of the passage of the Revenue Act of 1926 no suit or proceeding for the enforcement of the liabilities of these transferees for the tax in question was pending and that the respondent properly construed his powers in respect to these matters.

The remaining questions for determination have to do with the statutes of limitations which petitioners plead as a bar against the collection of that part of the tax assessed in September, 1923, and the assessment made in November, 1925; and these questions in turn depend for their solution upon the force and effect to be given to the waivers set forth in our findings of fact. The first of these is dated January 18, 1924, and purports to extend the time within which additional assessments of income tax might be made against the taxpayers for 1918 to one year from said date. The second waiver is dated January 6, 1925, and purports to extend the time within which such assessment might be made to December 31, 1925. In neither of these waivers is the Yalelms Corporation mentioned, but both name the Compressed Paper Box Co. as the waiving party. The first is signed " The Compressed Paper Box Company, Jonathan Godfrey, President," and the second " The Compressed Paper Box Company (Taxpayer), by Jonathan Godfrey, President, Trustee in Liquidation." It is the contention of the petitioners that neither of these waivers is effective as against the defunct corporation for the reason (1) that at the time they were executed said corporation was dissolved and in the hands of its directors as liquidating trustees, and that, therefore, its former president as such was without authority to act for or on its behalf, or to bind it by such an instrument; and (2) that, such corporation being in the hands of its di-

rectors as liquidating trustees, the said waiver was without binding force as against the trust estate unless signed by all the cotrustees.

In respect to the assessment of $32,176.95 made against the defunct corporation in September, 1923, it seems clear that the same has now lost its force since it was not collected within five years from June 15, 1919, the date of the filing of the corporation's return. *Russell* v. *United States*, 278 U. S. 181. The respondent in his brief states that this assessment was the result of a disallowance of amortization claims made by the corporation under paragraph 8(a) of section 234 of the Revenue Act of 1918, and therefore not restricted as to the time of its making. There is nothing in the record to sustain this contention. The letters to which he refers in his brief as proof of such facts were excluded from the evidence upon objection from his counsel.

It is necessary next to determine whether the respondent has established his affirmative allegation that the assessments involved in this appeal were within the time required by law as extended by agreements.

The return of the taxpayer corporation for the year 1918 was filed not later than July 22, 1919. The assessment of $83,682.40 was made on November 10, 1925, more than five years thereafter. These facts are *prima facie* evidence in support of the petitioners' pleaded allegation of error that the assessment was made after the taxpayer corporation's liability for additional tax for the year 1918 had been tolled by the statute of limitations. In these circumstances the respondent must prove that the agreements which he pleads and upon which he relies were actually entered into by the parties and that such agreements are valid and effect an extension of the statutory period within which he has authority to assess. *Farmers Feed Co.*, 10 B. T. A. 1069; *Bonwit Teller & Co.*, 10 B. T. A. 1300; *Carnation Milk Products Co.*, 15 B. T. A. 556. The agreements were introduced as evidence by the petitioner, and are included in our findings of fact. It remains only to determine whether such agreements were properly executed by the corporation or its agents legally authorized to bind it by their acts.

On the 26th day of August, 1922, the Yalelms Corporation took statutory steps to dissolve under the laws of the State of Connecticut, the directory provisions, as set forth in Chapter 188, Title XXXII of the General Statutes, Revision of 1918, applicable thereto being as follows:

SEC. 3446. *Voluntary dissolution after commencing business.* Whenever the directors of a corporation shall vote to terminate its corporate existence, they shall forthwith call a special meeting of the stockholders, to be held not less than thirty nor more than forty days from the date of such call. * * * If, at such meeting of the stockholders, three-fourths in interest of each class of

stock issued shall vote to confirm such vote of the directors, the directors shall proceed forthwith to wind up the affairs of such corporation. If every stockholder shall sign and acknowledge, before an officer authorized to take acknowledgements of deeds, an agreement among stockholders that the corporate existence of such corporation shall be terminated, the vote of the directors and the confirming vote of the stockholders aforesaid may be dispensed with.

SEC. 3447. *Directors trustees to wind up business.* The directors of a corporation whose existence is to be terminated pursuant to the vote or assent of its stockholders, as provided in section 3446, shall be trustees to close up the business of such corporation. * * *

SEC. 3448. * * * Such trustees shall proceed to wind up the affairs of the corporation, in accordance with the provisions of section 3447, under the direction of the court in the same manner as if they were receivers. The court may, for cause shown, extend the period within which the trustees shall sell the property of the corporation.

It seems clear from these provisions that from and after the filing, with the Secretary of State, of the certificate of dissolution, as was done in this case, the assets of a corporation become clothed with an equitable charge in the hands of its directors, as trustees, for dissolution purposes; and that all powers or control formerly exercised by them or others as officers or directors over the assets or affairs of the corporation are at an end. The accepted rule is stated in 14a Corpus Juris, sec. 3840(c), as follows:

*Powers.* A corporation, after dissolution and appointment of trustees, may exercise none of its former powers, although the statute sometimes permits the use of its name by the trustee for certain limited purposes. Thereafter the corporation can be bound only by the acts of the trustees who close its affairs, and cannot be bound by the acts of its former officers not acting as trustees. Citing *Ropp* v. *Fulton*, 183 Ind. 251.

In *Lemar's Shoe Co.* v. *Lemars Shoe Mfg. Co.*, 89 Ill. App. 245, the court, in applying this rule, said:

Where a corporation ceased to do business, all implied powers in its officers to bind it by incurring new obligations are at an end. The president may without special authority from the board of directors, perform all acts of an ordinary nature, which by usage or necessity are incident to his office, and bind the corporation by contracts made in the usual course of its business; *but when the corporation retires from business this authority ceases to exist.* (Italics supplied.)

In the appeal of the *Bamberg Cotton Mills Co.*, 8 B. T. A. 1236, which arose in South Carolina, where the laws appertaining to dissolved corporations were similar to the Connecticut statute, the waiver called into question had been executed by a successor to the taxpayer, which purchased its assets and assumed its debts, including taxes. This successor, the Santee Mills, executed the waiver by signing the name of its predecessor, the taxpayer, under which it affixed its own name, in parentheses, thus "(Now Santee Mills)." In refusing to accept such waiver as effective, the Board said:

The law of South Carolina, by which we are bound in this matter, places absolute control and power over the affairs of a corporation in dissolution in the directors of the corporation, who are made trustees by express statutory provision. Consequently, it is our opinion that they, and they only, could enter into agreements which would be binding on the corporation. These consents which do not bear the seal of the petitioner, which are not executed by an officer empowered under the laws of the State to act for the company, have no binding effect upon the taxpayer.

A different situation is sometimes presented in cases where a corporation is dissolved under the provisions of a statute which directs that its officers proceed to liquidate its assets without the intervention of trustees. In such cases no trust is created, but the corporation is its own liquidator under the management of its regular officers, who possess the same powers in liquidation that they had in the general management of its regular business. These officers are still agents of the corporation in charge of the management of its business; the only change is in the scope of its business which, from said time, is limited to the single object of liquidation.

This Board had occasion to deal with such a case in *Charles D. Jaffee*, 17 B. T. A. 675. In that case the corporation concerned, while in process of liquidation under section 221 of the General Corporation Laws of the State of New York, executed tax waivers by and through its treasurer, under its corporate seal. The pertinent provisions of section 221 of the New York laws, which we were called upon to construe in the *Jaffee* appeal, may be briefly stated by saying that they make but two requirements upon the corporation being dissolved: (1) that it " cease to carry on business, except for the purpose of adjusting and winding up its business," and (2) that the corporation *by its board of directors* should proceed to adjust and wind up its business and affairs and completely liquidate and distribute its assets.

We held that under this law the relationship which existed between the corporation and its directors, prior to its going into liquidation, remained unchanged during the process of dissolution, and that the act of the treasurer in executing the waiver over the name of the corporation and its corporate seal was within the scope of his agency and binding upon the corporation.

The true status of a corporation, under conditions set forth above, as distinguished from one being liquidated through its directors as trustees, is pointed out by the court in *Security Trust Co. of Rochester* v. *Pritchard*, 194 N. Y. S. 486, which we quoted at some length in our decision in the *Jaffee* appeal, *supra*. In that case stockholders of the dissolved corporation brought suit against the directors as liquidating trustees, charging irregularities and misapplication of the assets of the corporation. The defendants demurred

to the complaint filed on the ground of a defect in parties defendant, alleging, in effect, that the corporation was the responsible distributor of its assets and therefore a necessary party to the suit. The plaintiffs contended that the defendants were trustees under section 35 of the statutes, which provided that "upon the dissolution of a corporation the directors become trustees for the benefit of all who may be entitled to share in its assets and, to this end, are entitled to take possession of the assets and distribute them *pro rata* among its creditors." The court, in sustaining the demurrer of the defendants, held, in substance, that in cases of dissolution effected under the provisions of section 221 the capacity of the corporation to manage and control its own affairs in said process remained unimpaired; and that, it was *its own liquidator;* while under the provisions of section 35, where the directors were made trustees in liquidation, such directors replaced the corporation and became responsible in such trust capacity for the proper settlement and liquidation of the assets of the corporation. In such connection this court said, in part:

We think there is a defect of parties defendant in failing to join the corporation as a party. The plaintiff, in bringing the action against the directors, relied upon the provisions of section 35 of the General Corporation Law, which provides, in substance, that upon the dissolution of any corporation its directors, unless other persons shall be appointed by the Legislature or by the court, shall be the trustees of its creditors and stockholders, with power to settle its affairs and divide its property among the persons entitled thereto, and with authority to bring suits to recover assets, and they are made personally liable to the extent of property coming into their hands.

The defendants claim that section 221 of the General Corporation Law controls. That section provides a simple method of dissolving certain stock corporations without judicial proceedings, and provides that the corporation by its board of directors must adjust and wind up its business. Ample power is given for such purposes, and the corporation is continued in existence, for the purpose of paying and discharging its existing debts or obligations, and collecting and distributing its assets, and it may sue and be sued for the purpose of enforcing such obligations until its affairs have been wound up.

\* \* \* \* \* \* \*

It is reasonably clear that section 35 in the present state of the law, is applicable only when a corporation is dissolved by the repeal of its charter, or its corporate existence comes to an end by the expiration of its charter, or by the failure, for some reason, when it is dissolved to appoint a receiver or to designate some person as liquidator. \* \* \*

\* \* \* \* \* \* \*

We think, therefore, there is clearly a defect of parties defendant. The corporation is still in existence and will on plaintiff's theory be entitled to the property, and if the conveyances are declared void, the corporation is a necessary party. It is the liquidator, the cause of action belongs to it, and it was the one to assert the right to recover misappropriated corporate assets. \* \* \*

It will thus be seen that, under statutes which permit the corporation to dissolve without making the directors "liquidating trustees," the corporation becomes its own liquidator and no special trust is created; while, under conditions which obtain under section 35 of the New York laws, and of the laws of the State of Connecticut, as above set forth, the directors become "trustees"; and in the adjustment of its affairs, can only act in said trust capacity.

The respondent contends, however, that inasmuch as Godfrey, who signed these waivers as president of and for the Compressed Paper Box Co., was likewise one of the trustees of the dissolved corporation, his acts in this respect were the acts of his cotrustees and binding upon the trust estate. We can not accept the view thus announced. The statute places the responsibility of administration of the affairs of dissolved corporations jointly upon all of the directors as trustees, as hereinbefore pointed out, and it is to all of these trustees, acting together as a unit, and not to a single one of them, that the stockholders and creditors are entitled to look for the conservation and protection of the estate. Under these circumstances the general rule as applied to joint trustees is effective, and these directors, upon whom the law casts the trust, can only function as a collective unit in administration of the same. *Re Delaware River & A. R. Co.*, 76 N. J. L. 168; 68 Atl. 1104; *McGeorge* v. *Bigstone Gap Imp. Co.*, 88 Fed. 599; *Smith* v. *Weldman*, 37 Conn. 384; *Wilbur* v. *Almy*, 12 How. 180; *Colburn* v. *Grant*, 181 U. S. 601; *Winslow* v. *Baltimore & Ohio R. R. Co.*, 188 U. S. 646.

Further expressions of the proper application of this rule are found in a declaration made by the Supreme Court of Connecticut in a case decided by this tribunal in 1821, and other authorities, which we quote as follows:

It is established beyond a question that an authority given for a private purpose to a number of individuals, is joint, and must be strictly pursued. *Patterson* v. *Leavitt*, 4 Conn. 50.

Trustees have all equal power, interest and authority, and can not act separately, as executives may; but must joint, both in conveyances and receipts. Story on Equity. §128.

Where a strict trust is created, and two or more trustees are appointed to execute it. * · * * the powers conferred must be executed by all of them. *Sloo* v. *Law*, 3 Blatchf. 459, Fed. Cas. 22, p. 354.

In law there is no such person known as an *acting* trustee apart from his cotrustees. Perry on Trusts. §411.

Cotrustees may not act independently of one another, nor ignore each other in the management of the trust. The trust is entitled to the united judgment, discretion and ability of all the trustees selected. For this reason they may not delegate discretionary powers among themselves. *Colburn* v. *Grant, supra;* *Winslow* v. *B. & O. R. R. Co., supra.*

In matters of discretion, as distinguished from ministerial acts, cotrustees cannot act separately, in discharging their trusts. *Appeal of Vandover* (*Pa.*), 42 Am. Dec. 305.

An exhaustive search for instances not involving discretion, in which a single cotrustee might act for the trust, aside from matters purely ministerial, discloses few cases worthy of consideration, since practically all duties in connection with the adjustment of the affairs of a company in liquidation call for the exercise of more or less business judgment; and this is true, even in cases which involve the execution of contracts on which the corporation is admittedly bound. In the case of *Winslow* v. *B. & O. R. R. Co.*, *supra*, the trustees had executed their lease to the railway company covering property included within the trust estate. Under the terms of the lease the trustees obligated themselves to renew the lease, at its expiration, for an additional five years, at the option of the lessee upon the same terms as provided for in the original lease. At the expiration of the lease one of the trustees, as a formal matter, executed a renewal of the lease for and in behalf of himself and his cotrustees. Later litigation followed, which called into question the validity of this lease and the court held that its execution was an act which involved the exercise of discretion and could only be executed by all of the trustees acting jointly. To the same effect was the holding in *Anthony* v. *Janssen*, 183 Cal. 329; 191 Pac. 538, where the holder under an option executed by all of several cotrustees went into possession of property under a deed executed by one of the trustees. In a controversy between the trust estate and creditors of the supposed purchaser the court held that, in the absence of a provision in the law authorizing them to act separately, "their powers as trustees must be exercised by the united action of all of them to be valid."

The single case brought to our attention, wherein it is claimed approval has been found for the sustaining of tax waivers signed by former officers of a defunct corporation, is that of *United States* v. *Kemp* 12 Fed. (2d) 7, but we fail to find that the reasons assigned by the court for its decision in that case are authority for the sweeping contention that former officers, generally, can so bind the corporate estate. In the *Kemp* case the waiver involved was executed by the former president and secretary of the corporation, who were two of the several directors of the corporation. Prior thereto these two officers had filed an appeal in behalf of the corporation with the Commissioner of Internal Revenue, from assessments made, and at said time were in full charge of the prosecution of said appeal. The corporation had long since been dissolved and its assets distributed, and there was nothing definite in the record from which the court could determine just who its directors were, or who, other than these two officials, had assumed to act in such capacity since its dissolution.

Under these circumstances the court held the waiver to be binding upon the corporation upon a presumption of facts, which it expressed in the following language:

When the president and secretary of the board of directors of a corporation act, and it is not shown that the other directors protested or objected, the presumption may be indulged that they acquiesced. That presumption is very strong in this case as the corporation received substantial benefit by the audit following the execution of the waiver. * * *

The natural implication of the reason as there expressed by the court, in this case would seem to be that, but for the attending circumstances which gave rise to the presumption of fact, as found, the waiver signed by these officials could have had no binding force against the corporate estate. Under these circumstances we fail to see that this decision, in any manner or degree, is in conflict with our view thus indicated in holding that under the facts in this case the signing of these waivers was without authority to bind the trustees of this corporation by said act.

The return in this case was filed June 15, 1919, and the first assessment under consideration was made in September, 1923. The second additional assessment was made in November, 1925. No suit or other action to enforce the collection of the first assessment having been instituted within the period of five years after the filing of the return, and the last mentioned assessment having been made more than five years thereafter, and no valid waiver extending the time having been executed in either case, it follows that both are now barred by the statute of limitations. *Russell* v. *United States, supra.*

The petitioners plead and argue several alternative and additional contentions, but inasmuch as our conclusions above dispose of all matters material here, it is not necessary to discuss or decide the questions so raised. The statute of limitations having run against any additional tax liability of the taxpayer corporation not later than July 22, 1924, and the liability against these petitioners not having been asserted under section 280 of the Revenue Act of 1926 until May 22, 1926, it follows in conformity with (b) (1) of such section that on such date the respondent was without authority to determine the liabilities of these petitioners here in controversy.

Reviewed by the Board.

*Decision will be entered for the petitioners.*

---

Arundell, dissenting: The petitioners are transferees of assets of a dissolved corporation. The majority opinion holds the running of the statute of limitations bars the collection of any further taxes from the corporation, and, consequently, no liability attaches to the transferees. The facts are not in dispute. The corporation's tax re-

turns for the year 1918 were filed on June 15, 1919. Within the five years permitted by the statute for the assessment and collection of the taxes a so-called waiver was executed by the respondent and Godfrey, one of the liquidating trustees. This waiver purported to extend the period within which the taxes might be assessed for one year from the date the waiver was signed. Before the expiration of the period as extended a second waiver was executed by the same parties which purported to extend the period for assessment and collection for a further period of one year from the date of its execution.

At the trial of the case petitioner proved the date of filing the corporation's return, and rested. The respondent thereupon produced the waivers executed by Godfrey and the respondent. Godfrey, it was admitted by his counsel, signed as liquidating trustee. The majority opinion holds the respondent has not sustained his burden of establishing the sufficiency of the waivers. It is stated as a general proposition of law that trustees in matters involving discretion must act jointly and the record is silent on the matter of whether or not Godfrey had authority to act for his cotrustee. In the *Farmers Feed* case we held that, where a taxpayer makes a *prima facie* showing that collection of a deficiency is barred, the burden shifts to the respondent to bring himself within any exception to the statute upon which he relies. We pointed out in that opinion, as one of the compelling reasons for our conclusion, that the exceptions to the statute which would prevent its running were matters peculiarly within the knowledge of the respondent. We said in part:

> The determination of the tax controversies which are daily before us requires a highly practical handling and we see no reason why the Commissioner should stand idly by and decline to present to us any matters in avoidance of petitioner's plea if in fact the limitations period has not run by reason of an exception contained in the statute.

In the *Carnation Milk Products* case, 15 B. T. A. 556, we held that the respondent's burden of going forward after the taxpayer had made his *prima facie* case was not met " unless he shows that upon which he acted to be sufficiently effective to justify his reliance upon it." Neither of these cases decide how far the respondent must go in order to satisfy the burden of going forward. The effect of the Godfrey decision is to require the respondent to go the whole way and prove conclusively the validity in fact and law of the exception upon which he relies. This position can not be sustained on the *Farmers Feed* and *Carnation Milk* cases when it is recalled, as pointed out above, that one of the reasons for those decisions was that the party to whom passed the burden of going forward had within his possession the evidence to meet it. Applying that rule here, I think that when the respondent produced the consents ad-

mittedly signed by Godfrey as liquidating trustee, he produced evidence " sufficiently effective to justify his reliance upon it " and thus did all that was required of him at that stage of the case. In *Toledo, etc. R. R.* v. *Star Flouring Mills Co.* (C. C. A.), 146 Fed. 953, the court quotes with approval *Klunk* v. *Hocking Valley Railway Co.,* 77 N. E. 752, as follows:

The general rule would seem to be well established by an almost unbroken line of authority, that to rebut and destroy a mere prima facie case, the party upon whom rests the burden of repelling its effect, need only to produce such amount or degree of proof as will counter-avail the presumption arising therefrom. In other words, it is sufficient if the evidence offered for that purpose counter-balance the evidence by which the prima facie case is made out and established. It need not overbalance or outweigh it. *Smith* v. *Sac. Co.,* 11 Wall. 139, 20 L. Ed. 102; *Stewart* v. *Lansing,* 104 U. S. 505, 26 L. Ed. 866; *Foster* v. *Hall,* 12 Pick. 89, 22 Am. Dec. 400; *R. R. Co.* v. *Brazzil,* 72 Tex. 233, 10 S. W. 403.

See also Jones on Evidence, sec. 181.

This seems to me to be the proper rule to be applied in this proceeding, and if it is, then when the respondent produced the waivers the burden of going forward shifted back to the petitioners and it became incumbent on them to show that the waivers were insufficient to stay the running of the statute of limitations. Carrying out the majority opinion to its logical conclusion, the respondent in every case in which he relies on a waiver would be required to show, among other things, that every person signing in a representative capacity was the representative he purported to be, that the person signing was *sui juris,* that he was authorized to sign by his principal, and that he acted in conformity to state law. The well-nigh impossibility of procuring such proof is manifest and it was not held necessary in *United States* v. *Kemp,* 12 Fed. (2d) 7.

Godfrey knows whether or not he acted with the acquiescence or consent of Hayward in signing the waivers, and it seems to me that it was his duty to prove that he was not so acting, if such be the case. Of the three trustees, Godfrey owned 59 per cent of the stock of the corporation, Waldo (at the time the waivers were executed, deceased) owned 36 per cent, and Hayward, some or all of the remaining 5 per cent. Godfrey was one of the petitioners in these proceedings. He signed the waivers and yet seeks here to relieve himself of the effect of his acts and asks that we presume that he did not have authority to do what he did do, and by so presuming to relieve him of paying to the United States an amount due it which it would have been in a position to collect but for his act. If there be no other basis, the rule of estoppel should be applied to Godfrey and he should not now be permitted to plead a lack of authority from his cotrustee.

Even if it be taken as established under the State law that Godfrey's powers were limited, it does not follow that he could not waive the statute of limitations under the Federal taxing act. *Aldridge* v. *United States*, 64 Ct. Cls. 424; *Davis* v. *United States*, 27 Fed. (2d) 630; *Estate of Ben Pearl*, 18 B. T. A. 249.

There is another basis, however, for my dissent. The so-called trust that was established by the State of Connecticut when steps were taken to dissolve the corporation was one primarily for the benefit of the creditors, secondarily for the benefit of the stockholders. Whether or not a tax is a debt, it is undoubtedly a liability and one which a trustee in liquidation is required to discharge as well as any other indebtedness of the corporation. The United States is one of the beneficiaries of this so-called trust established by virtue of the laws of Connecticut upon the dissolution of one of its corporate creatures. Ordinarily, a trustee may not plead the statute of limitations against the beneficiary of a trust.

The majority opinion seeks to distinguish the case of *Kemp* v. *United States*, 12 Fed. (2d) 7, but it seems to me that that case is directly in point. There, as here, the waiver was signed by some of the trustees in liquidation, but not by all of them. In the absence of evidence to the contrary, the court indulged the presumption that the waiver there given was authorized by the other trustees, or if not previously authorized by them, they approved the act of the trustees signing by sitting idly by and accepting the benefits of their action. This should be our position in the instant case.

Morris, Smith, Green,[1] Murdock, and Black agree with this dissent.